# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

IYANNA DAVIS

                                 Plaintiff,                      **DOCKET NO.: 11-CV-0076**

           -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE OFFICER MICHAEL CAPOBIANCO,        **SECOND AMENDED**
Serial #6971, SGT HERMANN, POLICE OFFICER   **COMPLAINT**
CARL CAMPBELL, POLICE OFFICER DWIGHT
BLANKENSHIP, POLICE OFFICER JOSEPH
GRELLA, POLICE OFFICER JOHN DOES #1-5,
NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE INVESTIGATOR THOMAS BIDELL,
NASSAU COUNTY DISTRICT ATTORNEY'S       **JURY TRIAL**
OFFICE INVESTIGATORS JOHN DOES #2-5,
NASSAU COUNTY ASSISTANT DISTRICT
ATTORNEY JOHN DOES #1-5.

                            Defendants.
--------------------------------------------------------------------X

## NATURE OF THE ACTION

1.      This is an action for deprivation of Plaintiff's civil rights, committed by the

Defendants while acting in concert and under color of state law, and of Plaintiff's rights,

liberties, and immunities as guaranteed to her by reason of the Fourth and Fourteenth

Amendments to the United States Constitution. This Court is authorized to grant the Plaintiff

relief under 42 U.S.C. §§1983 and 1988.

## JURISDICTION

CH/DJ31215/FL1844

Case 2:11-cv-00076-LDW-ARL   Document 25   Filed 05/02/12   Page 2 of 36 PageID #: 277

2.      Jurisdiction in this matter is invoked in accordance with 28 U.S.C. §1331 and 28 U.S.C. §1367. Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide claims arising out of the pendant state claims pursuant to 28 U.S.C. § 1376(a). Plaintiff has fulfilled all statutory requirements in order to file its state pendant claims including but not exclusively the timely filing or a duly executed Notice of Claim as well as the elapse of the statutory timeframe thereafter before the initiation of the instant civil action.

## VENUE

3.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to the Plaintiff's claims occurred within Nassau; the actual place of employment of all of the individual Police Officers, District Attorney, and District Attorney's Office Investigators is Nassau County in the Eastern District of New York, and the County of Nassau is within the jurisdiction of the Eastern District of New York. The events surrounding this lawsuit occurred in Nassau County, in the Eastern District of New York. Additionally, Plaintiff resides within the County of Nassau in the Eastern District of New York.

## THE PARTIES

4.      The Plaintiff, IYANNA DAVIS (hereinafter referred to as "DAVIS") is a resident of the United States who lives within the Eastern District of New York.

5.      Upon information and belief, at all relevant times described herein, the Defendant, THE COUNTY OF NASSAU (hereinafter referred to as "NASSAU") was and continues to be a

CH/D131215/FL1844

municipal corporation organized and existing by virtue of the laws of the State of New York.

6.      Upon information and belief, at all relevant times described herein, Defendant, NASSAU, by its agents and/or employees operated, maintained and controlled the Nassau County Police Department, including all officers thereof.

7.      Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER MICHAEL CAPOBIANCO (hereinafter referred to as "CAPOBIANCO"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

8.      Upon information and belief, at all relevant times described herein, the Defendant POLICE SERGEANT HERMANN (hereinafter referred to as "HERMANN"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

9.      Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER CARL CAMPBELL (hereinafter referred to as "CAMPBELL"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

10.     Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER DWIGHT BLANKENSHIP (hereinafter referred to as "BLANKENSHIP"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

11.     Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER JOSEPH GRELLA (hereinafter referred to as "GRELLA"), is an individual and employee of the County of Nassau with an actual place of employment within the County of

CH/D131215/FL1844

Nassau, State of New York.

12. Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER JOHN DOE #1 (hereinafter referred to as "P.O. DOE #1"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

13. Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER JOHN DOE #2 (hereinafter referred to as "P.O. DOE #2"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

14. Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER JOHN DOE #3 (hereinafter referred to as "P.O. DOE #3"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

15. Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER JOHN DOE #4 (hereinafter referred to as "P.O. DOE #4"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

16. Upon information and belief, at all relevant times described herein, the Defendant POLICE OFFICER JOHN DOE #5 (hereinafter referred to as "P.O. DOE #5"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

17. Upon information and belief, at all relevant times described herein, the Defendant DISTRICT ATTORNEY'S OFFICE INVESTIGATOR THOMAS BIDELL (hereinafter referred

CH/D131215/FL1844

to as "DAOI BIDELL"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

18.     Upon information and belief, at all relevant times described herein, the Defendant DISTRICT ATTORNEY'S OFFICE INVESTIGATOR JOHN DOE #2 (hereinafter referred to as "DAOI DOE #2"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

19.     Upon information and belief, at all relevant times described herein, the Defendant DISTRICT ATTORNEY'S OFFICE INSVESTIGATOR JOHN DOE #3 (hereinafter referred to as "DAOI DOE #3"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

20.     Upon information and belief, at all relevant times described herein, the Defendant DISTRICT ATTORNEY'S OFFICE INVESTIGATOR JOHN DOE #4 (hereinafter referred to as "DAOI DOE #4"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

21.     Upon information and belief, at all relevant times described herein, the Defendant DISTRICT ATTORNEY'S OFFICE INVESTIGATOR JOHN DOE #5 (hereinafter referred to as "DAOI DOE #5"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

22.     Upon information and belief, at all relevant times described herein, the Defendant ASSISTANT DISTRICT ATTORNEY JOHN DOE #1 (hereinafter referred to as "ADA DOE #1"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

23.     Upon information and belief, at all relevant times described herein, the Defendant

CH/D131215/FL1844

ASSISTANT DISTRICT ATTORNEY JOHN DOE #2 (hereinafter referred to as "ADA DOE #2"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

24.     Upon information and belief, at all relevant times described herein, the Defendant ASSISTANT DISTRICT ATTORNEY JOHN DOE #3 (hereinafter referred to as "ADA DOE #3"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

25.     Upon information and belief, at all relevant times described herein, the Defendant ASSISTANT DISTRICT ATTORNEY JOHN DOE #4 (hereinafter referred to as "ADA DOE #4"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

26.     Upon information and belief, at all relevant times described herein, the Defendant ASSISTANT DISTRICT ATTORNEY JOHN DOE #5 (hereinafter referred to as "ADA DOE #5"), is an individual and employee of the County of Nassau with an actual place of employment within the County of Nassau, State of New York.

27.     Upon information and belief, at all relevant times described herein, Defendant CAPOBIANCO was acting within the scope of his employment as a Nassau County Police Officer.

28.     Upon information and belief, at all relevant times described herein, Defendant HERMANN was acting within the scope of his employment as a Nassau County Police Officer.

29.     Upon information and belief, at all relevant times described herein, Defendant CAMPBELL was acting within the scope of his employment as a Nassau County Police Officer.

30.     Upon information and belief, at all relevant times described herein, Defendant

CH/D131215/FL1844

BLANKENSHIP was acting within the scope of his employment as a Nassau County Police
Officer.

31.     Upon information and belief, at all relevant times described herein, Defendant
GRELLA was acting within the scope of his employment as a Nassau County Police Officer.

32.     Upon information and belief, at all relevant times described herein, Defendant
P.O. DOE #1 was acting within the scope of his employment as a Nassau County Police Officer.

33.     Upon information and belief, at all relevant times described herein, Defendant
P.O. DOE #2 was acting within the scope of his employment as a Nassau County Police Officer.

34.     Upon information and belief, at all relevant times described herein, Defendant
P.O. DOE #3 was acting within the scope of his employment as a Nassau County Police Officer.

35.     Upon information and belief, at all relevant times described herein, Defendant
P.O. DOE #4 was acting within the scope of his employment as a Nassau County Police Officer.

36.     Upon information and belief, at all relevant times described herein, Defendant
P.O. DOE #5 was acting within the scope of his employment as a Nassau County Police Officer.

37.     Upon information and belief, at all relevant times described herein, Defendant
DAOI BIDELL was acting within the scope of his employment as an Investigator for the Nassau
County District Attorney's Office.

38.     Upon information and belief, at all relevant times described herein, Defendant
DAOI DOE #2 was acting within the scope of his employment as an Investigator for the Nassau
County District Attorney's Office.

39.     Upon information and belief, at all relevant times described herein, Defendant
DAOI DOE #3 was acting within the scope of his employment as an Investigator for the Nassau
County District Attorney's Office.

CH/D131215/FL1844

Case 2:11-cv-00076-LDW-ARL   Document 25   Filed 05/02/12   Page 8 of 36 PageID #: 283

40.     Upon information and belief, at all relevant times described herein, Defendant DAOI DOE #4 was acting within the scope of his employment as an Investigator for the Nassau County District Attorney's Office.

41.     Upon information and belief, at all relevant times described herein, Defendant DAOI DOE #5 was acting within the scope of his employment as an Investigator for the Nassau County District Attorney's Office.

42.     Upon information and belief, at all relevant times described herein, Defendant ADA DOE #1 was acting within the scope of his employment with the Nassau County District Attorney's Office.

43.     Upon information and belief, at all relevant times described herein, Defendant ADA DOE #2 was acting within the scope of his employment with the Nassau County District Attorney's Office.

44.     Upon information and belief, at all relevant times described herein, Defendant ADA DOE #3 was acting within the scope of his employment with the Nassau County District Attorney's Office.

45.     Upon information and belief, at all relevant times described herein, Defendant ADA DOE #4 was acting within the scope of his employment with the Nassau County District Attorney's Office.

46.     Upon information and belief, at all relevant times described herein, Defendant ADA DOE #5 was acting within the scope of his employment with the Nassau County District Attorney's Office.

CH/D131215/FL1844

## FACTUAL ALLEGATIONS

47.     DAVIS was shot by Nassau County Police Officer(s) on May 13, 2010 at her residence located on the second floor of 31 Lafayette Avenue, Hempstead, New York.

48.     On May 13, 2010, in the early morning hours, Nassau County Police Officers and/or Investigators from the Nassau County District Attorney's Office presented at Ms. Davis' residence.

49.     On May 13, 2010, in the early morning hours, Nassau County Police Officers of the Special Operations Unit presented at Ms. Davis' residence.

50.     On May 13, 2010, the Nassau County Police Officers and/or Investigators from the Nassau County District Attorney's Office entered the residence of Ms. Davis without a search warrant.

51.     On May 13, 2010, the Nassau County Police Officers executed a warrant pursuant to a Nassau County Police Investigation.

52.     On May 13, 2010, the Nassau County Police Officers executed a warrant on behalf of the Nassau County District Attorney's Office Investigations Bureau.

53.     On May 13, 2010, the warrant executed by the Nassau County Police Officers and/or Nassau County District Attorney's Office Investigators specified the area in which the Nassau County Police Officers were permitted to search.

54.     On May 13, 2010, the warrant executed by the Nassau County Police Officers and/or Nassau County District Attorney's Office Investigators specified a search of the first floor of the residence.

55.     31 Lafayette Avenue in Hempstead, New York is a two family dwelling.

CH/D131215/FL1844

56.     There is a separate back door entrance for the second floor apartment located at 31 Lafayette Avenue, Hempstead, New York.

57.     There is an exterior locking mechanism on the door leading up to the second floor of 31 Lafayette Avenue, Hempstead, New York.

58.     The warrant executed by the Nassau County Police Department and/or Nassau County District Attorney's Office Investigators did not authorize entrance into the second floor of 31 Lafayette Avenue, Hempstead, New York and/or the Defendant failed to modify the warrant after being informed of additional information which invalidated the extent of the search authorized by the original search warrant obtained.

59.     The warrant executed by the Nassau County Police Department and/or Nassau County District Attorney's Office Investigators contained no reference to the second floor of 31 Lafayette Avenue, Hempstead, New York and/or was executed in bad faith by the Defendants as they were aware of information invalidating the warrant obtained.

60.     The Nassau County Police Officers and/or Nassau County District Attorney's Office Investigators arrested two individuals on May 13, 2010.

61.     Stephanie Swann was arrested by Nassau County Police Officers and/or Nassau County District Attorney's Office Investigators at 31 Lafayette Avenue, Hempstead, New York on May 13, 2010.

62.     Stephanie Swann resided on the first floor of 31 Lafayette Avenue, Hempstead, New York.

63.     Reginald Lecator was arrested by Nassau County Police Officers and/or Nassau County District Attorney's Office Investigators at 31 Lafayette Avenue, Hempstead, New York on May 13, 2010.

CH/D131215/FL1844

64. Reginald Lecator resided on the first floor of 31 Lafayette Avenue, Hempstead, New York.

65. No individual residing on the second floor of 31 Lafayette Avenue, Hempstead, New York was arrested on May 13, 2010.

66. The warrant executed by the Nassau County Police Department and/or Nassau County District Attorney's Office Investigators on 31 Lafayette Avenue, Hempstead, New York was pursuant to an investigation involving Stephanie Swann and/or Reginald Lecator.

67. Hearing the crashing in of doors, DAVIS fled to the safety of a closet located in her residence on the second floor of 31 Lafayette Avenue, Hempstead, New York.

68. While raiding the first floor residence, the Police intentionally entered the residence of the claimant on the second floor without just cause or authority to do so.

69. While raiding the first floor residence, the Police, with reckless disregard, entered the residence of the claimant on the second floor without just cause or authority to do so.

70. After entering the second floor, the Defendant(s) shot DAVIS.

71. DAVIS was shot while she was still hiding in the closet.

72. Immediately after the shooting, representatives of the Nassau County Police Department and/or the Nassau County District Attorney's Office began to take affirmative steps to cover up the wrongful shooting.

73. With absolutely no justification to do so, members of the Nassau County Police Department and/or the Nassau County District Attorney's Office began a course of conduct to protect the shooter from any criminal liability and/or culpability.

74. Upon information and belief, the Nassau County Police Department employed the use of the "Shooting Team" in order to justify the shooting of Davis.

CH/D131215/FL1844

75.    Upon information and belief, the "Shooting Team" is deployed anytime there is a civilian shooting at the hands of a Nassau County Police Officer.

76.    Upon information and belief, the "Shooting Team" is deployed anytime there is a civilian shooting by any Nassau County Law Enforcement Personnel.

77.    Upon information and belief, the "Shooting Team" is made up of approximately five individuals who are tasked with the responsibility of determining administratively whether there was a "good shoot."

78.    Upon information and belief, there is a prescribed timeframe in which the "shooting team" must make its determination.

79.    Upon information and belief, the "Shooting Team" has to make its determination within 48 hours of the shooting.

80.    Upon information and belief, the "Shooting Team" has been a rubber stamp of approval for members of the Nassau County Police Department personnel who have shot civilians.

81.    Upon information and belief, the "Shooting Team" has been a rubber stamp of approval for Nassau County Law Enforcement personnel who have shot civilians.

82.    The "Shooting Team" has created an atmosphere in which members of the Nassau County Police Department and/or Nassau County Law Enforcement personnel feel they can act with utter impunity.

83.    The policies and/or practices and/or procedures of the "Shooting Team" was the proximate cause and/or in conjunction with other policies and/or practices and/or procedures of Nassau County which was the proximate cause of the shooting of DAVIS.

84.    The Nassau County Internal Affairs Unit is charged with the duty of reviewing

CH/D131215/FL1844

the actions of Nassau County Police Officers to determine administratively whether an individual Police Officer has committed any wrongdoing.

85.     Upon information and belief, the Nassau County Internal Affairs Unit has been a rubber stamp of approval for members of the Nassau County Police Department personnel who have shot civilians.

86.     Upon information and belief, the Nassau County Internal Affairs Unit has been a rubber stamp of approval for members of the Nassau County Law Enforcement personnel who have shot civilians.

87.     The Nassau County District Attorney's Office is charged with the duty of prosecuting crimes in the jurisdictional limits of the County of Nassau.

88.     Upon information and belief, within the purview of the Nassau County District Attorney's Office's jurisdiction is to determine whether Nassau County Police Officers have wrongfully utilized deadly physical force in the execution of their job duties as Nassau County Police Officers.

89.     Upon information and belief, within the purview of the Nassau County District Attorney's Office Special Investigations Unit's jurisdiction is to determine whether Nassau County Police Officers have wrongfully utilized deadly physical force in the execution of their job duties as Nassau County Police Officers.

90.     Upon information and belief, the Nassau County District Attorney's Office has been a rubber stamp of approval for members of the Nassau County Police Department personnel who have shot civilians.

91.     Upon information and belief, the Nassau County District Attorney's Office has been a rubber stamp of approval for Nassau County Law Enforcement personnel who have shot

CH/D131215/FL1844

civilians.

92.     The Internal Affairs Unit of the Nassau County Police Department has created an atmosphere in which members of the Nassau County Police Department and/or Nassau County Law Enforcement personnel feel they can act with utter impunity.

93.     The policies and/or practices and/or procedures of the Internal Affairs Unit of the Nassau County Police Department was the proximate cause and/or in conjunction with other policies and/or practices and/or procedures of Nassau County which was the proximate cause of the shooting of DAVIS.

94.     The Nassau County District Attorney's Office has created an atmosphere in which members of the Nassau County Police Department and/or Nassau County Law Enforcement personnel feel they can act with utter impunity.

95.     The policies and/or practices and/or procedures of the Nassau County District Attorney's Office was the proximate cause and/or in conjunction with other policies and/or practices and/or procedures of Nassau County which was the proximate cause of the shooting of DAVIS.

96.     Upon information and belief, the Nassau County Police Department has set procedures which allow a Police Officer a prescribed amount of time before he/she has to answer any questions regarding the discharge of their firearm in a use of deadly force.

97.     Upon information and belief, the Nassau County District Attorney's Office has set procedures which allow a Police Officer a prescribed amount of time before he/she has to answer any questions regarding the discharge of their firearm in a use of deadly force.

98.     Upon information and belief, the Nassau County Police Department has set procedures which allow a Nassau County Law Enforcement Officer a prescribed amount of time

CH/D131215/FL1844

before he/she has to answer any questions regarding the discharge of their firearm in a use of deadly force.

99.    Upon information and belief, the Nassau County District Attorney's Office has set procedures which allow a Nassau County Law Enforcement Officer a prescribed amount of time before he/she has to answer any questions regarding the discharge of their firearm in a use of deadly force.

100.    The prescribed amount of time in which a Nassau County Police Officer and/or Nassau County Law Enforcement Officer is permitted to remain silent is referred to as a "cooling off period."

101.    The "cooling off period" is specifically designed so the Nassau County Police Officer and/or the Nassau County Law Enforcement Officer may tailor his/her story to the factual evidence gathered by other members of the Nassau County Police Department and/or Nassau County District Attorney's Office.

102.    The "cooling off period" has created an atmosphere in which members of the Nassau County Police Department and/or Nassau County Law Enforcement personnel feel they can act with utter impunity.

103.    The "cooling off period" was the proximate cause and/or in conjunction with other policies and/or practices and/or procedures of Nassau County was the proximate cause of the shooting of DAVIS.

104.    Nassau County has a de facto policy of indemnifying Nassau County Police Officers against allegations of the use of excessive force.

105.    Nassau County has a de facto policy of indemnifying Nassau County Police Officers against allegations of the wrongful use of deadly force.

CH/D131215/FL1844

Case 2:11-cv-00076-LDW-ARL   Document 25   Filed 05/02/12   Page 16 of 36 PageID #: 291

106.   Nassau County has a de facto practice of indemnifying Nassau County Police Officers against allegations of the use of excessive force.

107.   Nassau County has a de facto practice of indemnifying Nassau County Police Officers against allegations of the wrongful use of deadly force.

108.   Nassau County has a de facto procedure of indemnifying Nassau County Police Officers against allegations of the use of excessive force.

109.   Nassau County has a de facto procedure of indemnifying Nassau County Police Officers against allegations of the wrongful use of deadly force.

110.   Nassau County's de facto policy and/or practice and/or procedure of indemnifying Nassau County Police officers against allegations of the use of excessive force has created an atmosphere in which members of the Nassau County Police Department feel they can act with utter impunity.

111.   Nassau County's de facto policy and/or practice and/or procedure of indemnifying Nassau County Police officers against allegations of the wrongful use of deadly force has created an atmosphere in which members of the Nassau County Police Department feel they can act with utter impunity.

112.   Nassau County has a de facto policy of indemnifying Nassau County Law Enforcement Personnel against allegations of the use of excessive force.

113.   Nassau County has a de facto policy of indemnifying Nassau County Law Enforcement Personnel against allegations of the wrongful use of deadly force.

114.   Nassau County has a de facto practice of indemnifying Nassau County Law Enforcement Personnel against allegations of the use of excessive force.

115.   Nassau County has a de facto practice of indemnifying Nassau County Law

CH/DJ31215/FL1844

Enforcement Personnel against allegations of the wrongful use of deadly force.

116.    Nassau County has a de facto procedure of indemnifying Nassau County Law Enforcement Personnel against allegations of the use of excessive force.

117.    Nassau County has a de facto procedure of indemnifying Nassau County Law Enforcement Personnel against allegations of the wrongful use of deadly force.

118.    Nassau County's de facto policy and/or practice and/or procedure of indemnifying Nassau County Law Enforcement Personnel against allegations of the use of excessive force has created an atmosphere in which members of the Nassau County Law Enforcement Personnel feel they can act with utter impunity.

119.    Nassau County's de facto policy and/or practice and/or procedure of indemnifying Nassau County Law Enforcement Personnel against allegations of wrongful use of deadly force has created an atmosphere in which members of the Nassau County Law Enforcement Personnel feel they can act with utter impunity.

120.    The indemnification policies and/or practices and/or procedures of the County of Nassau were the proximate cause and/or in conjunction with other policies and/or practices and/or procedures of Nassau County which were the proximate cause of the shooting of DAVIS.

121.    CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE#3, DAOI DOE #4, and/or DAOI DOE #5 drew their firearms without just cause.

122.    CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4, and/or DAOI DOE #5 pointed their respective firearms at DAVIS without just cause.

CH/D131215/FL1844

123.    Upon information and belief, CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4, and/or DAOI DOE #5 placed their respective fingers in the trigger well of their respective firearms while pointing same at DAVIS.

124.    Upon information and belief, CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4, and/or DAOI DOE #5 shouted threats of potential violent action at DAVIS while they placed their respective fingers in the trigger well of their respective firearms while pointing same at DAVIS.

125.    Upon information and belief, CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4, and/or DAOI DOE #5 shot DAVIS after shouting threats of potential violent action at DAVIS while they placed their respective fingers in the trigger well of their respective firearms while pointing same at DAVIS.

126.    Neither the County of Nassau nor its employees had any reason to believe DAVIS was armed or dangerous when they shot her.

127.    After being shot on May 13, 2010, DAVIS was rushed to the Nassau County Medical Center where she was treated for her injuries resulting from the gun shot wound.

128.    While being treated for her injuries, the county agents and/or employees attempted to question the claimant in her weakened condition, without the benefit of an attorney, for the sole purpose of justifying the shooter's use of force.

CH/D131215/FL1844

129.     Upon information and belief, no member of the Nassau County Police Department has been admonished in any way for the shooting of DAVIS.

130.     Upon information and belief, no member of the Nassau County Law Enforcement Personnel has been admonished in any way for the shooting of DAVIS.

131.     Upon information and belief, no member of the Nassau County Police Department has been reprimanded in any way for the shooting of DAVIS.

132.     Upon information and belief, no member of the Nassau County Law Enforcement Personnel has been reprimanded in any way for the shooting of DAVIS.

133.     Upon information and belief, no member of the Nassau County Police Department has been punished in any way for the shooting of DAVIS.

134.     Upon information and belief, no member of the Nassau County Law Enforcement Personnel has been punished in any way for the shooting of DAVIS.

### AS AND FOR PLAINTIFF'S
### FIRST CLAIM FOR RELIEF FOR EXCESSIVE FORCE (1983)
### AGAINST CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O.
### DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI
### DOE #2, DAOI DOE #3, DAOI DOE #4 and DAOI DOE #5

135.     Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

136.     Defendant(s) used excessive force on the person of DAVIS on or about May 13, 2010.

137.     Defendant(s), with willful and malicious intent, shot DAVIS.

138.     The actions of the Defendant(s) were intentionally, recklessly and/or negligently

CH/D131215/FL1844

performed to intimidate and did cause physical and emotional distress to DAVIS.

139.    The excessive force used by the Defendants was conducted under color of state law within the purview of 42 U.S.C. § 1983, and Plaintiff has suffered damages therefrom.

140.    The excessive force used in the arrest was an abuse of power, constituted a seizure within the meaning of the Fourth Amendment and deprived Plaintiff of her liberty. The seizure and deprivation of her liberty was unreasonable and without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

141.    Defendant(s) also took active steps toward permitting and encouraging several Defendants to threaten, provoke, instill fear and use force against Plaintiff.

142.    As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**SECOND CLAIM FOR RELIEF FOR ASSAULT AGAINST NASSAU COUNTY,**
**CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1,**
**P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2,**
**DAOI DOE #3, DAOI DOE #4 and DAOI DOE #5**

143.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

144.    The aforestated actions of the Defendant(s) amounted to an assault of DAVIS.

145.    The actions of the Defendant(s) placed DAVIS in apprehension of imminent

harmful contact.

146.    The actions of the Defendant(s) placed DAVIS in apprehension of imminent offensive contact.

147.    From the vantage point of DAVIS, the Defendant(s) had the real ability to bring about harmful contact while they pointed their firearms at her.

148.    From the vantage point of DAVIS, the Defendant(s) had the apparent ability to bring about harmful contact while they pointed their firearms at her.

149.    The actions of the Defendant(s) were menacing to DAVIS.

150.    The actions, words and gestures of the Defendant(s) caused DAVIS to believe that harmful bodily contact was about to occur.

151.    The actions, words and gestures of the Defendant(s) caused DAVIS to believe that offensive bodily contact was about to occur.

152.    After the Defendant(s) shot DAVIS, they continued to keep their firearms pointed at DAVIS.

153.    After being shot, DAVIS was in continued apprehension of imminent bodily harm from the Defendant(s).

154.    When the Defendant(s) depressed the trigger on his/her/their firearm(s), he/she/they did so voluntarily.

155.    When the Defendant(s) depressed the trigger on his/her/their firearm(s), he/she/they did so knowing the result would be that DAVIS would be struck with a bullet(s).

156.    DAVIS did not consent to the harmful and/or offensive apprehension of imminent harmful and/or offensive touching by the Defendant(s).

157.    As a result of the aforementioned actions of the Defendant(s), Plaintiff suffered

CH/D131215/FL1844

physical and emotional injuries.

158.     The Defendant(s)' actions were intentionally and/or maliciously and/or recklessly performed to intimidate and did cause physical pain and emotional distress to DAVIS.

159.     At all times mentioned, the Defendant(s) were acting within the scope of their employment as Police Officers and/or Investigators for the District Attorney's Office.

160.     At all times mentioned, all Defendant Police Officers and Investigators of the District Attorney's Office were employees of NASSAU and were acting within the scope of their employment.

161.     At all times mentioned, the officers and employees were employed by the Defendant NASSAU.

162.     The actions of the officers and employees, which were performed within their scope of employment, created liability against the Defendant NASSAU under New York State Law.

163.     Consequently, the Defendant NASSAU is liable under *respondeat superior* for the actions of its employees.

164.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**THIRD CLAIM FOR RELIEF FOR BATTERY AGAINST NASSAU COUNTY,**
**CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1,**
**P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2,**

## DAOI DOE #3, DAOI DOE #4 and DAOI DOE #5

165. Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

166. The Defendant(s) intentionally shot DAVIS.

167. The Defendant(s) recklessly shot DAVIS.

168. DAVIS did not consent to the harmful and/or offensive touching by the Defendant(s).

169. As a result of the aforementioned actions of the Defendant(s), Plaintiff suffered physical and emotional injuries.

170. The Defendant(s)' actions were intentionally and/or maliciously and/or recklessly performed to intimidate and did cause physical pain and emotional distress to DAVIS.

171. At all times mentioned, the Defendant(s) were acting within the scope of their employment as Police Officers and/or Investigators for the District Attorney's Office.

172. At all times mentioned, all Defendant Police Officers and Investigators of the District Attorney's Office were employees of NASSAU and were acting within the scope of their employment.

173. At all times mentioned, the officers and employees were employed by the Defendant NASSAU.

174. The actions of the officers and employees, which were performed within their scope of employment, created liability against the Defendant NASSAU under New York State Law.

175. Consequently, the Defendant NASSAU is liable under *respondeat superior* for the

CH/D131215/FL1844

actions of its employees.

176.    As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**FOURTH CLAIM FOR RELIEF FOR DEFAMATION AGAINST NASSAU COUNTY,**
**CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1,**
**P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2,**
**DAOI DOE #3, DAOI DOE #4, DAOI DOE #5, ADA DOE #1, ADA DOE #2, ADA DOE**
**#3, ADA DOE #4 and ADA DOE #5**

177.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

178.    Upon information and belief, after shooting DAVIS, the Defendant(s) released information to the press indicating that the shooting was caused by the actions of DAVIS.

179.    Upon information and belief, after shooting DAVIS, the Defendant(s) released an official press release which indicated that the shooting was caused by the actions of DAVIS.

180.    Upon information and belief, after shooting DAVIS, a representative(s) of the Defendant(s) released information to the press indicating that the shooting was caused by the actions of DAVIS.

181.    Upon information and belief, after shooting DAVIS, a representative(s) of the Defendant(s) released an official press release which indicated that the shooting was caused by the actions of DAVIS.

CH/D131215/FL1844

182.    The information which was released to the press was not true.

183.    The information which was released in the press release(s) was not true.

184.    At the time the information was released to the press, the Defendant(s) and or their representative(s) knew said information to be false.

185.    At the time the information contained in the press release(s) was released to the press, the Defendant(s) and or their representative(s) knew said information to be false.

186.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) has exposed DAVIS to public contempt.

187.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) has exposed DAVIS to public ridicule.

188.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) has exposed DAVIS to public disgrace.

189.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) has induced an evil opinion of DAVIS in the minds of right thinking persons.

190.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) has deprived DAVIS of her friendly intercourse in society.

191.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) constitutes an accusation of the commission of a crime and/or violation by DAVIS and as such is Defamation per se.

192.    Upon information and belief, the defamation was communicated both orally and in writing.

193.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) constitutes libel.

CH/D131215/FL1844

Case 2:11-cv-00076-LDW-ARL  Document 25  Filed 05/02/12  Page 26 of 36 PageID #: 301

194.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) constitutes libel per se.

195.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) constitutes slander.

196.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) constitutes slander per se.

197.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) was factual in nature.

198.    The false information published by the Defendant(s) or representative(s) of the Defendant(s) was regarding DAVIS.

199.    The false information published by the Defendant(s) or representatives of the Defendant(s) was published to a third party.

200.    The factual information which was published by the Defendant(s) or representative(s) of the Defendant(s) was false.

201.    The Defendant(s) and/or representative(s) of the Defendant(s) knew or should have known such factual information was false at the time it was published.

202.    At all times mentioned, the Defendant(s) were acting within the scope of their employment as Police Officers and/or Investigators for the District Attorney's Office.

203.    At all times mentioned, all Defendant Police Officers and Investigators of the District Attorney's Office were employees of NASSAU, and were acting within the scope of their employment.

204.    At all times mentioned, the officers and employees were employed by the Defendant NASSAU.

CH/D131215/FL1844

205.    The actions of the officers and employees, which were performed within their scope of employment, created liability against the Defendant NASSAU under New York State Law.

206.    Consequently, the Defendant NASSAU is liable under *respondeat superior* for the actions of its employees.

207.    As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**FIFTH CLAIM FOR RELIEF FOR VIOLATIONS OF DAVIS' FOURTH and**
**FOURTEENTH AMENDMENT RIGHTS AGAINST NASSAU COUNTY,**
**CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1,**
**P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2,**
**DAOI DOE #3, DAOI DOE #4, DAOI DOE #5, ADA DOE #1, ADA DOE #2, ADA DOE**
**#3, ADA DOE #4 and ADA DOE #5**

208.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

209.    The Defendant(s) did not possess a valid search warrant to enter the premises of DAVIS on the second floor of 31 Lafayette Avenue, Hempstead, New York on May 13, 2010 as Defendants knew or should have known that the premises was composed of two segregated living spaces. The Defendants possessed information which required them to seek a new warrant

which included the first floor only, but chose to execute on a warrant which the knew or should have know was excessive consideration the purpose of same.

210.    The Defendant(s)' entry into the dwelling of DAVIS on the second floor of 31 Lafayette Avenue, Hempstead, New York was in direct violation of her Fourth Amendment right to be free from illegal searches and seizures.

211.    The Defendant(s) knew and/or should have known that they had no legal right to present on the second floor of 31 Lafayette Avenue, Hempstead, New York on May 13, 2010.

212.    The Defendant(s) knew and/or should have known that they had no legal right to present on the second floor of 31 Lafayette Avenue on May 13, 2010 and that they had no right to open any closet on the second floor of 31 Lafayette Avenue, Hempstead, New York.

213.    The Defendant(s) knew and/or should have known that they had no legal right to present on the second floor of 31 Lafayette Avenue on May 13, 2010 and that they had no right to point a firearm at DAVIS.

214.    The actions of the Defendants were intentionally, recklessly and/or negligently done to intimidate, and did cause physical and emotional distress to DAVIS.

215.    The Search and Seizure was conducted under the color of state law within the purview of 42 U.S.C. § 1983, and Plaintiff has suffered damages therefrom.

216.    The excessive force used in the arrest was an abuse of power, constituted a seizure within the meaning of the Fourth Amendment and deprived Plaintiff of her liberty. The seizure and deprivation of her liberty was unreasonable and without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

217.    As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys'

CH/D131215/FL1844

Case 2:11-cv-00076-LDW-ARL Document 25 Filed 05/02/12 Page 29 of 36 PageID #: 304

fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

## AS AND FOR PLAINTIFF'S
## SIXTH CLAIM FOR RELIEF FOR FALSE ARREST/FALSE IMPRISONMENT (1983) AGAINST CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4 and DAOI DOE #5

218.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

219.    The detention of Plaintiff by the Defendant(s) was conducted under color of state law within the purview of 42 U.S.C. § 1983; and Plaintiff has suffered damages therefrom.

220.    The detention of Plaintiff was without probable cause, without an arrest warrant, was an abuse of power, constituted a seizure within the meaning of the Fourth Amendment and deprived Plaintiff of her liberty.

221.    The seizure and deprivation of Plaintiff's liberty was unreasonable and without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

222.    The actions of the Defendant(s) were intentionally, recklessly and/or negligently done to intimidate, and did cause emotional distress to Plaintiff.

223.   As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

## AS AND FOR PLAINTIFF'S
## SEVENTH CLAIM FOR RELIEF FOR FALSE ARREST/IMPRISONMENT (PENDENT) AGAINST NASSAU COUNTY, CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4 and DAOI DOE #5

224.   Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

225.   The Officers, without an arrest warrant and without probable cause, detained DAVIS against her will.

226.   DAVIS was conscious of her confinement and did not consent to this confinement.

227.   DAVIS was detained without any legal justification to do so in that she had not committed any crime, nor was her confinement by Defendant(s) otherwise privileged.

228.   Because of Defendant(s)' lack of reasonable suspicion, probable cause, an arrest warrant, or any other valid legal reason to effectuate the detention of DAVIS, her detention and the actions of the Defendant(s) amounted to an unlawful arrest and imprisonment.

229.   At all times mentioned, all officers and employees of NASSAU were acting

within the scope of their employment.

230.  At all times mentioned, the officers and employees were employed by the Defendant NASSAU.

231.  The actions of the officers and employees, which were performed within their scope of employment, created liability against the Defendant NASSAU under New York State Law.

232.  Consequently, the Defendant NASSAU is liable under *respondeat superior* for the actions of its employees.

233.  As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

## AS AND FOR PLAINTIFF'S
### EIGHTH CLAIM FOR RELIEF FOR VIOLATIONS OF DAVIS' SUBSTANTIVE DUE PROCESS OF RIGHTS AGAINST NASSAU COUNTY, CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4, DAOI DOE #5, ADA DOE #1, ADA DOE #2, ADA DOE #3, ADA DOE #4 and ADA DOE #5

234.  Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

235.  Upon information and belief, the Defendant(s) provided the Court with false and/or exaggerated information in order to obtain the warrant for entry and search of 31

CH/D131215/FL1844

Case 2:11-cv-00076-LDW-A. .L  Document 25  Filed 05/02/12  ге 32 of 36 PageID #: 307

Lafayette Avenue, Hempstead, New York.

236.    Upon information and belief, the Defendant(s) intentionally miscommunicated the content of the search warrant to the Defendant(s) who were to execute it, overstating the area which was to be legally searched.

237.    Upon information and belief, the Defendant(s) performed these acts intentionally and/or in utter disregard for the rights of the individuals residing on the second floor of 31 Lafayette Avenue, Hempstead, New York.

238.    As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**NINTH CLAIM FOR RELIEF FOR NEGLIGENCE AS AGAINST NASSAU COUNTY, CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4, DAOI DOE #5, ADA DOE #1, ADA DOE #2, ADA DOE #3, ADA DOE #4 and ADA DOE #5**

239.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

240.    Defendant(s) had a duty to exercise due care to the Plaintiff and the other individuals located at 31 Lafayette Avenue, Hempstead, New York.

241.    Defendant(s) breached this duty of care through their negligent handling and use of their firearms.

242.    The Defendant(s)' breach of their duty to exercise reasonable caution in the use and handling of their firearms proximately caused the Plaintiff to be struck with a bullet discharged from Defendant(s)' firearm(s).

243.    Plaintiff sustained physical and mental damage as a result of being shot by Defendant(s).

244.    As a proximate result of Defendant(s)' negligence, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but no less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

### AS AND FOR PLAINTIFF'S
### TENTH CLAIM FOR RELIEF FOR NEGLIGENT HIRING AND SUPERVISION AGAINST NASSAU COUNTY, CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4, DAOI DOE #5, ADA DOE #1, ADA DOE #2, ADA DOE #3, ADA DOE #4 and ADA DOE#5

245.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

246.    Upon information and belief, it was the custom, policy and practice of Defendant(s) to hire certain officers, including the Police Officer Defendants, without conducting the appropriate background checks, investigations and psychological evaluations.

247.    Upon information and belief, it was the custom, policy and practice of NASSAU to conduct inadequate investigations of officer candidates, as was done with the Police Officer Defendant(s).

CH/D131215/FL1844

248. Upon information and belief, it was the custom, policy and practice of NASSAU to inadequately supervise the actions and conduct of officers, including the Defendant Police Officer(s).

249. Upon information and belief, it was the custom, policy and practice of NASSAU to continue to employ police officers, including Defendant Police Officer(s), after it is known that such officer(s) consistently violated the constitutional rights of persons such as Plaintiff.

250. These customs, policies and practices were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

251. NASSAU is therefore liable for violations of Plaintiff's constitutional rights as caused by Defendant(s) as described in more detail in the foregoing paragraphs; and Plaintiff has suffered damages therefrom.

252. As a proximate result of Defendant(s)' customs, policies and practices for negligent hiring, improper supervision and improper retention of officers, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

### AS AND FOR PLAINTIFF'S
### ELEVENTH CLAIM FOR RELIEF FOR FAILURE TO INTERVENE AGAINST CAPOBIANCO, HERMANN, CAMPBELL, BLANKENSHIP, GRELLA, P.O. DOE #1, P.O. DOE #2, P.O. DOE #3, P.O. DOE #4, P.O. DOE #5, DAOI BIDELL, DAOI DOE #2, DAOI DOE #3, DAOI DOE #4 and DAOI DOE #5

253. Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the complaint marked and numbered previously with the same force and effect as

CH/D131215/FL1844

if more fully set forth at length herein.

254.   The Defendant(s) battered and assaulted the Plaintiff in direct violation of her Constitutional Rights.

255.   The Defendant(s) observed other members of the Nassau County Police Department violate the Constitutional Rights of the Plaintiff and failed to prevent the obvious violations.

256.   The Defendant(s) failed to perform their sworn duty as Police Officers to prevent crimes in their presence. The Defendant(s)' failure to act was a direct result of a culture that exists in the Nassau County Police Department to condone, overlook and/or ignore excessive force committed by members of the Nassau County Police Department against civilians.

257.   Defendant(s) is/are therefore liable for violations of Plaintiff's constitutional rights as caused by Defendants as described in more detail in the foregoing paragraphs; and DAVIS has suffered damages therefrom.

258.   As a proximate result of Defendant(s)' actions/inaction, Plaintiff was greatly physically injured, humiliated, injured in her reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A.   Under the First Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorneys' fees.

CH/DJ31215/FL1844

B.    Under the Second Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorneys' fees.

C.    Under the Third Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorneys' fees.

D.    Under the Fourth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorneys' fees.

E.    Under the Fifth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorneys' fees.

F.    Under the Sixth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorneys' fees.

G.    Under the Seventh Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorneys' fees.

H.    Under the Eighth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS, plus punitive damages and attorneys' fees.

I.    Under the Ninth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS, plus punitive damages and attorneys' fees.

I.    Under the Tenth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS, plus punitive damages and attorneys' fees.

I.    Under the Eleventh Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS, plus punitive damages and attorneys' fees.

Dated: Lake Success, New York
       March 29, 2012

                            Respectfully Submitted,

                            FRIEDMAN HARFENIST KRAUT &
                            PERLSTEIN, LLP
                            *Attorneys for the Plaintiff*

                            By: _____/s/_____
                                Charles Horn
                                3000 Marcus Avenue, Suite 2E1
                                Lake Success, New York 11042
                                (516)355-9600

CH/D131215/FL1844