# Exhibit C



Nassau County Police Department

# Department Procedure

| PROCEDURE NUMBER | REVISION |
| --- | --- |
| ADM 1221 | 1 |

**PROCEDURE TITLE**
Deadly Force Response (DFR) Team

| | |
| --- | --- |
| **POLICY** | The policy of the Police Department is to conduct administrative investigations of incidents involving the use of deadly physical force by Members of the Department. The Deadly Force Response Team has been established as part of the administrative response to these incidents. |
| **PURPOSE** | To establish procedures for the administrative response to deadly physical force incidents involving Members of the Department. |
| **DEFINITIONS** | Deadly Force Response (DFR) Team: a team established to respond to incidents involving the use of deadly physical force, by a Member of the Department, in order to gather information for an administrative report to the Commissioner of Police. The Duty Chief [See Glossary] will be designated as the Team Coordinator and will determine the level of response as one of the following: |

Full team response: response to an incident by the following members:

1. Duty Chief,
2. Administrative Officer [See Glossary] of the Member's Command or Duty Inspector, [See Glossary]
3. Commanding Officer, Police Academy or his designee,
4. Supervisor, Homicide Squad.

Limited team response: response to an incident by the following members:

1. Administrative Officer of the Member's Command or Duty Inspector,
2. Commanding Officer, Police Academy or his designee.

Deadly physical force: means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury. (PL)

| | |
| --- | --- |
| **SCOPE** | All Members of the Department. |
| **SOURCES** | Not applicable. |
| **RULES** | [See Department Rules, Article 5] |
| **REPLACES** | ADM 1221 Revision 0, dated 06/15/97. |
| **PROCEDURE** | A.  Incidents Occurring Within Nassau County |
| **Member of the Department** | 1.  *Notifies* the Desk Officer of Precinct of Occurrence [See Glossary] when he has used deadly physical force. |
| **Desk Officer** | 2.  *Assigns* supervisors as follows: |

a.  a supervisor to respond and assume command, and

b.  a Care Taker Supervisor to respond and assume the responsibility of primary care for the member(s) involved.

NASSAU COUNTY
000075

| ISSUING AUTHORITY | SIGNATURE | EFFECTIVE DATE | PAGE |
| --- | --- | --- | --- |
| Acting Commissioner | Thomas C. Krumpter | 08/05/2011 | 1 of 4 |

| Deadly Force Response (DFR) Team | ADM 1221 |
|---|---|

|  |  |
|---|---|
|  | Note: The Care Taker Supervisor should be a supervisor from the member'(s) Division, if one is available. |
| Scene Supervisor | 3. *Responds* to the scene, *and* |
|  | a. *assumes* command of the scene, |
|  | b. *gathers* information necessary for the proper response to the incident, |
|  | c. *notifies* the Desk Officer with available details. |
|  | 4. *Initiates* the Crime Scene Duties Procedure. [See OPS 8115] |
| Care Taker Supervisor | 5. *Responds* to the scene and *assumes* the responsibility of primary care for the member(s) involved, including any of the following: |
|  | a. medical treatment, |
|  | b. peer support, |
|  | c. critical incident stress management. [See ADM 2402] |
|  | 6. *Stays* with the member(s) involved and *explains* to him the procedures to be conducted. |
|  | 7. *Secures* any firearm(s) used in the incident by Members of the Department. |
| Desk Officer | 8. *Determines* if the incident involves deadly physical force. |
|  | 9. If the incident *does not* involve deadly physical force, *notifies* the Scene Supervisor that he is responsible for the investigation. |
| Scene Supervisor | 10. *Investigates* the incident. [End of Procedure] |
| Desk Officer | 11. If the incident *does* involve deadly physical force, *notifies* a Police Communications Shift Supervisor to contact the DFR Team Coordinator. |
| Police Communications Shift Supervisor | 12. *Notifies* the DFR Team Coordinator. |
|  | 13. *Initiates* the Administrative Duty Coverage Procedure [See ADM 2010], if necessary. |
| Team Coordinator | 14. *Communicates* with the Desk Officer and *determines* the response of the DFR Team based on the following: |
|  | a. full team response [See Definition] if the incident involves a Member of the Department discharging a firearm, causing an injury, |
|  | b. limited team response [See Definition] if the incident involves a Member of the Department discharging a firearm, *not* causing an injury. |
|  | 15. *Advises* the Desk Officer as to who will respond for other incidents *not* involving a discharge of a firearm. |
|  | 16. *Notifies* a Police Communications Shift Supervisor for DFR Team response. |
| Police Communications Shift Supervisor | 17. *Notifies* DFR Team members as directed by the DFR Team Coordinator. |
|  | 18. *Initiates* the Administrative Duty Coverage Procedure [See ADM 2010], if necessary. |

NASSAU COUNTY

000016

Deadly Force Response (DFR) Team                    ADM 1221    1

| | |
|---|---|
| DFR Team | 19. *Responds* to the scene and *ascertains* the facts regarding the incident. |
| | 20. *Reviews* the facts of the incident with the Team Coordinator. |
| Team Coordinator | 21. *Directs* the Care Taker Supervisor in the proper disposition of the secured firearm(s). |
| Care Taker Supervisor | 22. *Delivers* the secured firearm(s), as directed by the Team Coordinator. |
| Scene Supervisor | 23. If the incident involved the use of a firearm, *initiates* the Firearms Discharge Procedure. |See ADM 1220| |
| Team Coordinator | 24. *Provides* for the replacement of a member's service firearm, if it is taken. |
| | 25. *Verbally reports* to the Commissioner, as soon as practical. |
| | 26. *Ensures* the following: |

       a.  the preparation of a narrative report |See Glossary| containing the initial account of the incident,

       b.  the delivery of the report, to the Commissioner, before the end of the next business day.

B.  Incidents Occurring Within New York City, Suffolk County, or Westchester County

| | |
|---|---|
| Member of the Department | 1. *Notifies* the Desk Officer of the resident precinct |See Glossary| when he has used deadly physical force. |
| Desk Officer | 2. *Assigns* a Care Taker supervisor to respond and assume responsibility of primary care for the member(s) involved. |

       Note:  The Care Taker Supervisor should be a supervisor from the member'(s) Division, if one is available.

      3. If the incident involves the discharge of a firearm, *assigns* a supervisor to respond.

      4. *Notifies* a Police Communications Shift Supervisor to contact the DFR Team Coordinator.

| | |
|---|---|
| Care Taker Supervisor | 5. *Responds* to the scene and *assumes* the responsibility of primary care for the member(s) involved, including any of the following: |

       a.  medical treatment,

       b.  peer support,

       c.  critical incident stress management. |See ADM 2402|

      6. *Stays* with the member(s) involved and *explains* to him the procedures to be conducted.

| | |
|---|---|
| Police Communications Shift Supervisor | 7. *Notifies* the DFR Team Coordinator. |
| | 8. *Initiates* the Administrative Duty Coverage procedure |See ADM 2010|, if necessary. |
| Team Coordinator | 9. *Communicates* with the Desk Officer and *determines* the response of the DFR Team based on the following: |

       a.  full team response if the incident involves a Member of the Department discharging a firearm, causing:

NASSAU COUNTY

0 0 0 0 7 1

Deadly Force Response (DFR) Team                ADM 1221    1

|                | | |
|----------------|---|---|
|                | (1) a serious physical injury, *or* | |
|                | (2) death; | |
|                | b. limited team response if the incident involves a Member of the Department discharging a firearm, causing: | |
|                | (1) no injury, *or* | |
|                | (2) an injury *other* than a serious physical injury or death. | |
| Team Coordinator | 10. *Advises* the Desk Officer as to who will respond for other incidents *not* involving a discharge of a firearm. | |
|                | 11. *Notifies* a Police Communications Shift Supervisor for DFR Team response. | |
| Police Communications Shift Supervisor | 12. *Notifies* DFR Team members as directed by the DFR Team Coordinator. | |
|                | 13. *Initiates* the Administrative Duty Coverage Procedure [See ADM 2010], if necessary. | |
| DFR Team       | 14. *Responds* to the scene and *ascertains* the facts regarding the incident. | |
|                | 15. *Reviews* the facts of the incident with the Team Coordinator. | |
| Team Coordinator | 16. *Evaluates* the situation and responds to the scene, as necessary. | |
| Supervisor     | 17. *Initiates* the Firearms Discharge Procedure. [See ADM 1220] | |
| Team Coordinator | 18. *Verbally* reports to the Commissioner, as soon as practical. | |
|                | 19. *Ensures* the following: | |
|                | a. the preparation of a narrative report containing the initial account of the incident, | |
|                | b. the delivery of the report, to the Commissioner, before the end of the next business day. | |

C. Incidents Occurring Outside of Resident Counties [See Glossary]

| | | |
|---|---|---|
| Member of the Department | 1. *Notifies* his Commanding Officer when he has used deadly physical force. | |
| | 2. If unable to contact the Commanding Officer, *contacts* the Police Communications Shift Supervisor for notification. | |
| Commanding Officer | 3. *Makes* an immediate notification to the Duty Inspector. | |
| Duty Inspector | 4. *Makes* an immediate notification to the Duty Chief. | |
| Duty Chief | 5. *Makes* an immediate notification to the Chief of Department. | |
| Chief of Department | 6. *Directs* response of the DFR team as necessary. | |
| | 7. *Verbally reports* to the Commissioner, as soon as practical. | |

NASSAU COUNTY

0 0 0 0 7 8

 Nassau County Police Department

# Department Procedure

| PROCEDURE TITLE | PROCEDURE NUMBER | REVISION |
|---|---|---|
| Firearm Discharge Report | ADM 1220 | 0 |

**POLICY**
The policy of the Police Department is to record and investigate incidents when a member has discharged a firearm.

**PURPOSE**
To establish procedures for the reporting and investigating of a firearm discharge by a Member of the Force.

**DEFINITIONS**
Firearm: [See Glossary]

Firearm discharge: the discharge of a firearm by a Member of the Force, except while lawfully hunting or target shooting.

Firearm Discharge Log Book: a numbered sequential listing of firearms discharges that are reported to the Communications Bureau (CB).

**SCOPE**
All Members of the Force.

**SOURCES**
P.L. §265.00 (Firearm definition)

**RULES**
1. Members of the force will notify the Department, as soon as practical, when they have discharged a firearm.

**REPLACES**
Teletype Orders 164-85 and 14-88.
Patrol Headquarters Order 25-88.
Detective Division (DD) General Order 102-85.
Rules and Regulations, Article 8, Rule 13, sub 2.

**PROCEDURE**

**Member of the Force**
1. *Notifies* the Desk Officer of the precinct of occurrence [See Glossary], when he has discharged a firearm

**Desk Officer**
2. *Determines* if the firearm discharge involved the use of deadly physical force. [See Glossary]

3. If the firearm discharge *is* deadly physical force,
   a. *assigns* a Supervisor to investigate the incident,
   b. *initiates* the Use of Deadly Force Investigation Procedure, [See OPS 12410]
   c. *initiates* the Deadly Force Response (DFR) Team Procedure. [See ADM 1221]

4. If the firearm discharge *is not* deadly physical force, *ensures* that the member's Commanding Officer is notified of the discharge.

**Member's Commanding Officer**
5. *Assigns* a Supervisor to investigate the incident.

**Assigned Supervisor**
6. *Responds* as directed and *investigates* the incident.

7. *Prepares* PDCN Form 161, Firearm Discharge Report.

8. *Contacts* a CB Supervisor and *requests* the next Firearm Discharge Incident Number.

NASSAU COUN
000079

## Firearm Discharge Report                                    ADM 1220   0

| | |
|---|---|
| CE Supervisor | 9. *Issues* the next Firearm Discharge Incident Number and *records* the information in the Firearm Discharge Log Book. |
| Assigned Supervisor | 10. *Forwards* PDCN Form 161 to his Commanding Officer. |
| Commanding Officer | 11. *Reviews* PDCN Form 161 for completeness and accuracy and *signs* the report. |
| | 12. *Photocopies* PDCN Form 161, *and* |
| |    a. *faxes* the copy to the Chief of Operations, |
| |    b. *faxes* the copy to the involved member's Division Chief, |
| |    c. *retains* one copy in the Command. |
| | Note: This report should be forwarded as soon as possible after the preliminary investigation is complete. In any event, they should be forwarded no later than 0900 hours the next business day. |
| | 13. *Prepares* narrative report detailing complete investigation. |
| | 14. *Photocopies* narrative report, *and* |
| |    a. *forwards* original narrative report and original PDCN Form 161, to the Chief of Operations as soon as practical, |
| |    b. *retains* one copy of narrative report in the Command. |
| Office of Chief of Operations | 15. *Makes* data entries from information supplied on PDCN Form 161. |
| Chief of Operations | 16. *Reviews* the incident and *reports* all significant issues to the Commissioner of Police. |
| Office of Chief of Operations | 17. *Photocopies* PDCN Form 161, *and* |
| |    a. *forwards* the copy to the Commanding Officer of Firearms Training Unit (FTU), |
| |    b. *files* the original. |
| FTU Commanding Officer | 18. *Evaluates* the incident and *determines* if information should be used in subsequent firearms training. |

NASSAU COUNTY

000080

their collar, in no event will pony tails be permitted or other styles or lengths of hair which may be readily grabbed by a suspect or defendant.

b.  Sideburns will be neatly trimmed, may extend to the bottom of the ear lobe, trimmed level therewith and be not more than one and one-half inches wide at the base. In no event will such be so wide as to interfere with a proper seal when wearing a Scott Air Pac.

c.  Neatly trimmed moustache, may be worn, which will not extend over the top of the upper lip, but which may extend outward or downward one-half inch beyond the corners of the mouth.

d.  Beards and Goatees will not be permitted. A growth of whiskers will be permitted while on duty for medical reasons only when approved by the Chief Surgeon.

2.  Uniformed Members – Female

a.  Hair will be neatly cut and trimmed at all times while on duty. Hair styles will be conservative and not excessive in length. The maximum permissible bulk of hair will be one and one-half inches in thickness on top and one inch in thickness at the back and sides of the head, however, in no event will any hair style or thickness of hair interfere with the proper wearing of uniform headgear. The hair style may cover the top portion of the ear but not beyond the midpoint thereof. Length may not extend more than one-half inch below the top of the shirt collar. In no event will pony tails be permitted or other styles or length of hair which may be readily grabbed by a suspect or defendant.
   1)  Hair longer than the above may be worn but must be pulled back away from the face and secured so that it does not touch the collar.
   2)  Items used to hold hair up must blend with hair.
   3)  Decorative articles may not be worn in hair.

b.  Make Up, if worn, is to be worn in moderation while in uniform.

c.  Black socks or black stockings are to be worn with the uniform.

d.  Shoes to be worn, while in uniform, will:
   1)  Be black, plain style, and low heel (not more than 2 inches).
   2)  Not be platform type, open toe, or open heel.

3.  Uniformed member may not wear any item of jewelry which constitutes a safety hazard.

a.  Rings may be worn on only one finger of each hand while on duty.
b.  The wearing of an earring or earrings will not be permitted.

4.  Non-Uniformed Members

a.  Will be neat and tidy at all times.
b.  Extreme or exaggerated attire will not be permitted.
c.  Hair will be neatly groomed.

Rule 16. Use of Force

Members of the Department will not use Physical Force except as provided by law.

In addition, members will:

1.  Not fire warning shots.

2.  Not fire shots from a moving vehicle or at a moving vehicle unless:

NASSAU COUNTY

000081

Standards of Conduct

a. Such member is in a position whereby he may reasonably fire an accurate shot at imminent danger of death or serious physical injury.

b. Such member is in a position whereby he may reasonably fire an accurate shot at the assailant and is legally justified in using deadly physical force and innocent bystanders are not likely to be injured by an inaccurate shot or ricochet.

3. Not use deadly physical force on the basis of a notification unless the member using such deadly physical force has independent knowledge whereby the member may reasonably believe that he is legally justified in using deadly physical force.

4. Not use deadly physical force on the basis of mere suspicion.

5. Not use deadly physical force in circumstances that present a grave risk of death or serious physical injury to innocent persons.

6. Not recklessly use deadly physical force.

Rule 17. Discrimination in the Workplace

1. Members of the Department will not discriminate against another member, or participate in, or encourage behavior that constitutes discrimination.

2. Members of the Department will promptly report acts of discrimination they observe, or become aware of, to a supervisor.

3. Members of the Department will not disseminate any photograph, literature or other material that may create a hostile work environment.

4. Members are required to familiarize themselves with the current Nassau County Equal Employment Opportunity Policy.

Rule 18. Notification of Off-Duty Employment

1. Members of the Department are permitted to engage in off-duty employment, but will notify their Commanding Officer within 5 working days upon beginning such employment.

2. Members of the Department will not engage in off-duty employment which is unlawful or may create a conflict of interest or an appearance of impropriety in connection with employment in the Nassau County Police Department.

3. Members of the Department, while engaging in off-duty employment and for the purposes of that employment, will not use any Police Department equipment or access any information retained by the Department.

4. Members of the Department, while performing activities related to off-duty employment, will not conduct themselves in a manner that would give the appearance that they are acting within the scope of their Nassau County Police Department employment, wear all or part of the Nassau County Police Department uniform, identify themselves as Members of the Nassau County Police Department or as Police Officers.

Rule 19. LIRR Police Ride Program

1. Members of the Force utilizing the LIRR Police Pass will comply with all conditions of use listed on the pass.

NASSAU COUNTY
000082

*Nassau County Police Academy*

## Lesson Plan

| LESSON TITLE: | | COURSE: |
|---|---|---|
| Use of Force | 01.321.00 | Recruit Police Officer |

| DURATION HOURS: | TRAINEE LEVEL: | PREPARED BY: | PAGE: 1 OF: 10 |
|---|---|---|---|
| 4 Hours | Recruit/ Police Officer | Chief James Garside Date: 7/19/84 REVISED BY: Sergeant Richard J. Leddy Date: 09/17/2007 | |

| METHOD OF PRESENTATION: | INSTRUCTOR: Police Academy Staff |
|---|---|
| Lecture/ Power Point | APPROVED BY: Sergeant Edward P. Reilly |

INSTRUCTIONAL OBJECTIVES: At the completion of this module, each trainee, without reference to notes (from memory) unless stated otherwise with 100% accuracy be able to orally or in writing:

1. Recite the material and elements of the following definitions:
   a. Physical injury
   b. Serious physical injury
   c. Deadly physical force
2. State, with 100% accuracy, whether the use of <u>physical force</u> in a particular set of circumstances is legally correct. (The set of circumstances will be provided in verbal, written, or video taped format.)
3. State, with 100% accuracy, whether use of <u>deadly physical force</u> in a particular set of circumstances is legally correct. (The set of circumstances will be provided in verbal, written, or video taped format.)
4. List orally or in writing the five stages in the progression (or escalation) of force, in the appropriate order.
5. State, with 100% accuracy, the Department's policy on the use of force (Article 5 Rule 16)

| TRAINEE REFERENCES: | TRAINING AIDS REQUIRED: |
|---|---|
| Penal Law Article 35 NCPD Training Bulletins 5, 43, 51 NCPD Departmental Manual Article 5 Rule 16 | Power Point Presentation Over Head Projector White Board Video Tape: "ABC News – Deadly Physical Force" Handout Material: Training Bulletins 5, 43, 51 Video Tape (1204): " Civil Liability and the Use of Physical Force" |

INSTRUCTOR REFERENCES:
Penal Law Article 35
McKinney's Commentaries on the Penal Law
"A Balance of Forces" –Us Justice Dept.
Handbook for Police Civil Liability Harper & Row Media Programs
NCPD Departmental Manual Article 5 Rule 16

NASSAU COUNTY

000083



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

## I. Introduction:

Self, background and experience

## II. Motivation:

In the performance of their duty Police Officers routinely must make decisions to the use of force. The responsibility to make proper decisions is an ever-present reality and is not lessened by the fact that the Officer must make these decisions often under the worst of circumstances.

Police Officers know that their use of force will necessarily be subject to scrutiny both from within and without the Police Department; criminal and civil prosecution may be the result if the Officer's actions are deemed inappropriate. Yet, failure to use force when it is reasonable and necessary may very well mean injury or death to the Police Officer and/or innocent civilians.

Aside from the prospect of being the subject of litigation, there are other practical reasons why an Officer's use of force must be proper. The law demands it; Police Officers have a sworn duty to safeguard the rights of the individual. This duty prohibits officers from abridging the rights of a person even under the most stressful and dangerous conditions. Therefore, the use of force must be REASONABLE, NECESSARY as it relates to the circumstances, and LAWFUL.

(NOTE: Advise class that the law to be covered primarily relates to Peace Officers and Police Officers, that the rules for civilians differs somewhat and is NOT particularly covered in this presentation)

## III. Instructional Objectives:

(See cover sheet)

## IV. Presentation:

A. Definitions:

In order to understand the concepts regarding force, it is necessary to return to the basics and review three definitions from Article 10 of the Penal Law.

NASSAU COUNTY

000084



*Nassau County Police Academy*

| LESSON PLAN | METHODS/AIDS KEY POINTS |
|---|---|

a. Physical Injury:                                                      Overhead

- impairment of physical condition, or
- substantial pain.

B. Serious Physical Injury:                                        Overhead

physical injury which

- causes death.
- creates substantial risk of death.
- causes protracted and serious disfigurement.
- causes protracted impairment of health.
- Causes protracted loss or impairment of the function of a bodily organ.

C. Deadly Physical Force:                                          Overhead

physical force, which under the circumstance it is used, is readily capable of causing death or other serious physical injury.

- use example of a person who shatters a kneecap using a board.
- use example of firing a shot and missing.
- Note: no injury need result, only that the force be "readily capable."

D. Physical Force:

There is no statutory definition for this term; however, any force less than deadly physical force may be considered physical force.

<u>JUSTIFICATION – USE OF FORCE – GENERALLY</u>                Overhead

Regarding the use of force, it is justifiable and NOT an offense when it is

1. Authorized by law

2. Performed by a <u>public</u> servant in the reasonable exercise of his duties.

3. Emergency – greater vs. lesser harm.

NASSAU COUNTY

000085



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

## JUSTIFICATION – USE OF PHYSICAL FORCE

1. Self-defense

   - includes defense of other.

   - extent of force – which is reasonably necessary to thwart the unlawful use of force by another.

2. Suicide

3. Arrests

   - as always force must be <u>reasonable</u> and <u>necessary.</u>

   - the arrest must be lawful, ie., based on probable cause

   - the use of force to effect an arrest is not limited by the fact that the offense is a violation or traffic infraction.

4. Certain Crimes

   Article 35 specifically permits the use of physical force, other than deadly physical force, to prevent, terminate or arrest in cases of:

   - larceny
   - criminal mischief
   - criminal trespass (by persons licensed and privileged)

5. Special persons

   - parents, guardians
   - correction officials
   - common carrier
   - physicians

## JUSTIFICATION – USE OF DEADLY PHYSICAL FORCE

Article 35 of the Penal law specifically outlines the rules regarding the use of deadly physical force. It is important that Police Officers understand these rules – yet there are some practical problems facing the Officer who <u>must</u> <u>make a decision</u> whether or not to use Deadly Physical Force.

NASSAU COUNTY

000086



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

Practical Problems - affecting the Officer's decision:

1. <u>Time</u> – very often the Officer has a little as 3 seconds to make a decision.

2. <u>Distance</u> – very often his opponent is extremely close - often within arms reach, rarely more than 20 feet away.

3. <u>Lighting</u> – majority of these situations take place at night (darkness).

4. <u>Stress</u> – Officer's state of excitement, stressful environment, contribute to the difficulty of the decision.

5. <u>Margin for Error</u> – society imposes little room for error in cases where deadly physical force is used.

As a result of the above, the vast majority of Police Officers rely primarily, if not exclusively, on the SELF-DEFENSE rules in making their decisions regarding the use of Deadly Physical Force.

A person may not use deadly physical force upon another person under circumstances specified in Subdivision One unless:

a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating; except that he is under no duty to retreat if he is:

(i) in his dwelling and not the initial aggressor; or

(ii) a police officer or peace officer or a person assisting a police officer or a peace officer at the latter's direction, acting pursuant to section 35.30; or (Penal Law 35.15 (2a)

Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the police officer or peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force. (Penal Law 35.30(3)

NASSAU COUNTY

000087



*Nassau County Police Academy*

| LESSON PLAN | METHODS/AIDS KEY POINTS |
|---|---|

ARTICLE 35 – DEADLY PHYSICAL FORCE:

A Police /Peace Officer may use DPF if he/she has RCTB it necessary to:

  1.  Prevent/Terminate:

    Attack of DPF: Robbery: Arson*: Kidnapping: Forcible Rape: Forcible Sodomy: Burglary of dwelling or occupied building – Attempts

  2.  Arrest/Prevent Escape:

    Burglary 1st: Arson*: Kidnapping: Escape 1st: "Forcible Felon": Felon-escapes/resists custody, armed with deadly weapon or firearm – Attempts

*NOTE : Amendment to Penal Law regarding arsons of motor vehicles is not totally consistent with Article 35 which speaks of defending a <u>PREMISE</u> from arson.

Duty with respect to innocent bystanders.

The fact that a police or a peace officer is justified in using deadly physical force under circumstances prescribed in paragraphs (a) and (b) of Subdivision One does not constitute justification for reckless conduct by such police officer or peace officer amounting to an offense against or with respect to innocent persons whom he is not seeking to arrest or retain in custody.
(Penal Law 35.30 (2)

Methods/Aids Key Points:
- Blackboard
- CDRBARK
- BAKEFF
- Tennessee v. Garner

PROGRESSION OF FORCE

In their use of force, both physical and deadly physical, Police Officers are reminded that their actions will be judged under the criteria of REASONABLENESS and NECESSITY. Typically, levels of force which are available to the Police Officer are as follows:

  1.  <u>Verbal Direction</u> – this is the least intrusive level of force and may vary from a simple request to an emphatic command.

  2.  <u>Physical Direction</u> – often, control of a person requires physical contact; the direction and extent varies with the circumstances, but may be as slight as a mere touch to as severe as a carotid restraint hold.

Show VTR – ABC – Deadly Physical Force

Blackboard

NASSAU COUNTY

000088



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

3. Non-Lethal /Oleoresin Capsicum (OC) – the chemical agent in OC often has a controlling effect on a non-compliant subject because it causes a sensation of pain; it should be noted, however, that OC is not totally effective on all subjects and may be ineffective against mentally disabled persons, as well as individuals who are under the influence of alcohol and/or drugs. (Remind class to review department's policy contained in Training Bulletin 97-001).

4. Impact Weapons - the actions of an opponent may compel an Officer to use a more intrusive level of force, namely, the police baton or slapjack. These weapons, (especially the baton), when properly used provide a control mechanism which also gives the Officer a measure of safety. It is important to note that, depending on the circumstances, the use of a baton or slapjack may constitute deadly physical force.

5. Firearm – the highest level of force available to the Police Officer is the firearm. Firing this weapon at another person is restricted to those situations in which deadly physical force is justified.

## PRINCIPLES OF THE PROGRESSION:

1. A stage in the progression may be skipped due to the circumstances.

2. If possible, the Police Officer should give the subject the opportunity to comply at each stage. Once compliance is achieved, the escalation ceases. (To do otherwise is to use excessive force.)

3. It is not the Officer who is the aggressor. It is his opponent who is ESCALATING the use of force by not complying…and in so doing the subject compels the Officer to progress to the next level.

4. The progression is not always upward. The situations in which force is used are often in a state of flux; therefore, the Officer must continually assess the circumstances and, as appropriate, escalate or de-escalate the use of force.

5. Remember – all force situations must be judged in the light of:

    a. REASONABLENESS

    b. NECESSITY

NASSAU COUNTY

0 0 0 0 8 9



Nassau County Police Academy

LESSON PLAN

METHODS/AIDS
KEY POINTS

## DEPARTMENT GUIDELINES: RULES AND REGULATIONS
(Refer also to Training Bulletin 51)

Article 5. Rule 16. Use of Force.

Members of the Department shall not use Physical Force except as provided by Law.

In addition, members shall:

1. Not fire warning shots.

2. Not fire shots from a moving vehicle or at a moving vehicle unless:

   a. Such member or a third person is in imminent danger of death or serious physical injury.

   b. Such member is in a position whereby he may reasonably fire an accurate shot at the assailant and is legally justified in using deadly physical force and innocent bystanders are not likely to be injured by an inaccurate shot or ricochet.

3. Not use deadly physical force on the basis of a notification unless the member using such deadly physical force has independent knowledge whereby the member may reasonably believe that he is legally justified in using deadly physical force.

4. Not use deadly physical force on the basis of mere suspicion.

5. Not use deadly physical force in circumstances that present a grave risk of death or serious physical injury to innocent persons.

6. Not recklessly use deadly physical force.

## ADDITIONAL POINTS TO REMEMBER:

1. Threats

   a. In order for an officer to act upon a threat, he must reasonably perceive the imminent use of unlawful physical force. Were there any OVERT ACTS, in addition to the threat?

   b. Conditional threats – "Future" threats don't justify the use of force nor threats based on conditions.

Show VTR – "Civil Liability and the Use of Physical Force"

NASSAU COUNTY



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

2. Tactics – many times Police Officers use poor tactical judgment in handling a situation and thus contribute to the need for the use of physical force. For example:

    a. Family disturbance – does the Officer inflame the situation or does he calm it? Do the Officers separate the disputants?

    b. Making arrests – when the Officer is about to make an arrest, given the opportunity, does he/she request assistance? Ex: VTL arrest as shown in the video-tape. If the Officer had assistance on hand, might it obviate the need for physical force?

3. Equipment – liability may ensue if Police Officers:

    a. Use unauthorized weapons

    ex. (i) sap gloves

        (ii) unauthorized firearms or rounds.

    b. Use authorized equipment improperly

    ex. (i) delivering a roundhouse blow to the head with a baton.

        (ii) using a Kel-light (steel) flashlight as a substitute for a baton.

    c. Rules and Regulations
       Article 8, Rules 9 to 12.

4. Prisoners

    a. Once resistance to an arrest is overcome, once the subject is subdued, the Officer can only use the appropriate force to maintain control. He himself must maintain SELF-CONTROL.

    b. The courts expect that Police Officers will not over-react, even when faced with extreme verbal abuse.

NASSAU COUNTY

000091



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

## REASONABLENESS/NECESSITY

The question of whether force was excessive or not is essentially resolved by the trier of facts - the jury. The Officer must always keep in mind that his actions will be judged according to their reasonableness and necessity.

## COMPREHENSION CHECK

Instructor should make frequent checks for comprehension during the presentation and at the built in discussion breaks during the videotape.

## V. Summary:

Summarize the important concepts; make sure that the instructional objectives have been met.

NASSAU COUNTY

000092



*Nassau County Police Academy*

**Lesson Plan**

| LESSON TITLE: Use of Force – Progression of Force – and Liability | 01.322.00 | COURSE: Recruit Training | |
|---|---|---|---|
| DURATION HOURS: 4 Hours | TRAINEE LEVEL: Recruit | PREPARED BY: Chief James Garside Date: 7/15/84 REVISED BY: Sergeant Richard J. Keddy Date: 09/17/2007 | PAGE: 1 OF: 8 |
| METHOD OF PRESENTATION: Lecture | | INSTRUCTOR: Police Academy Staff APPROVED BY: Sergeant Edward P. Reilly | |

**INSTRUCTIONAL OBJECTIVES:** At the completion of this module, each trainee, without reference to notes (from memory) unless stated otherwise with 100% accuracy be able to orally or in writing:

1. Recite the material and elements of the following definitions:
   a. Physical injury
   b. Serious physical injury
   c. Deadly physical force
2. State three of the five practical problems affecting a police officers decision to use deadly physical force.
3. Recognize the considerations and consequences associated with the use of force.
4. State, with 100% accuracy, whether the use of <u>physical force</u> in a particular set of circumstances is legally correct. (The set of circumstances will be provided in verbal, written, or video taped format.)
5. State, with 100% accuracy, whether use of <u>deadly physical force</u> in a particular set of circumstances is legally correct. (The set of circumstances will be provided in verbal, written, or video taped format.)
6. List orally or in writing the five stages in the progression (or escalation) of force, in the appropriate order.
7. State, with 100% accuracy, the Department's policy on the use of force Article 5 Rule 16.

| TRAINEE REFERENCES: | TRAINING AIDS REQUIRED: |
|---|---|
| Penal Law Article 35 NCPD Training Bulletins 5, 43, 51 NCPD Departmental Manual Article 5 Rule 16 NCPD Departmental Manual Article 8 Rule 9 to 12 | Power Point Presentation Over Head Projector White Board Video Tape: "ABC News – Deadly Physical Force" Handout Material: Training Bulletins 5, 43, 51 Video Tape (1204): " Civil Liability and the Use of Physical Force" |

**INSTRUCTOR REFERENCES:**
Penal Law Article 35
McKinney's Commentaries on the Penal Law
"A Balance of Forces" –Us Justice Dept.
Handbook for Police Civil Liability Harper & Row Media Programs
NCPD Departmental Manual Article 5 Rule 16
NCPD Departmental Manual Article 8 Rule 9 to 12

NASSAU COUNTY

000093

 *Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

## I. INTRODUCTION:

    A. Background. Training. Experience.

## II. MOTIVATION

In the performance of their duty Police Officers routinely must make decisions relative to the use of force. The responsibility to make proper decisions is an ever-present reality and is not lessened by the fact that the Officer must make these decisions often under the worst of circumstances.

Police Officers know that their use of force will necessarily be subject to scrutiny both from within and without the Police Department; criminal and civil prosecution may be the result if the Officer's actions are deemed inappropriate. Yet, failure to use force when it is reasonable and necessary may very well mean injury or death to the Police Officer and/or innocent civilians.

Aside from the prospect of being the subject of litigation, there are other practical reasons why an Officer's use of force must be proper. The law demands it; Police Officers have a sworn duty to safeguard the rights of the individual. This duty prohibits Officers from abridging the rights of a person even under the most stressful and dangerous conditions. Therefore, the use of force must be REASONABLE and NECESSARY as it relates to the circumstances, and LAWFUL.

*Note: Advise the class that the law to be covered primarily relates to Peace Officers and Police Officers, that the rules for civilians differs somewhat and is not particularly covered in this presentation.*

## III. INSTRUCTIONAL OBJECTIVES

    A. (See cover page)

## IV. PRESENTATION

    A. Use of Force Definitions – In order to understand the concepts regarding force, it is necessary to return to the basics and review three definitions from Article 10 of the Penal Law.

        1. Physical Injury – The impairment of physical condition, or substantial pain.

        2. Serious Physical Injury – Physical Injury which causes death.

Note: Overhead/ Power Point

NASSAU COUNTY

0 0 0 0 9 4

1



Nassau County Police Academy

LESSON PLAN

METHODS/AIDS
KEY POINTS

creates substantial risk of death, causes protracted and serious disfigurement, causes protracted impairment of health or causes protracted loss or impairment of the function of a bodily organ.

3. Deadly Physical Force – Physical force, which under the circumstances it is used, is readily capable of causing death or other serious physical injury.

Note: Overhead/ Power Point

    a. Use example of a person who shatters a kneecap using a board.
    b. Use example of firing a shot and missing.

*Note: No injury need result, only that the force be "readily capable".*

4. Physical force – There is no statutory definitions for this term, however, any force less than deadly physical force may be considered physical force.

B. Justification - Use of Force

    1. Generally regarding the use of force, it is justifiable and NOT an offense when it is:
        a. Authorized by law or judicial decree.
        b. Performed by a <u>public servant</u> in the reasonable exercise of his duties.
        c. Emergency – greater vs. lesser harm.

C. Justification - Use of Physical Force

    1. Self-defense includes defense of others and the extent of force is that which is reasonably necessary to thwart the unlawful use of force by another.

    2. Suicide

    3. Arrests

        a. As always force must be reasonable and necessary
        b. The arrest must be lawful, i.e. , based on probable cause.
        c. The use of force to affect an arrest is not limited by the fact that the offense is a violation or traffic infraction.

    4. Certain Crimes

        a. Article 35 specifically permits the use of physical force, other than deadly physical, to prevent, terminate or arrest in cases of:

NASSAU COUNTY

000095

2



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

    i. Larceny
    ii. Criminal Mischief
    iii. Criminal Trespass (by persons licensed and
       privileged)

5. Special Persons

    a. Parents and Guardians
    b. Correction Officials
    c. Common Carrier
    d. Physicians

D. Justification – Use of Deadly Physical Force

1. Article 35 of the Penal Law specifically outlines the rules
   regarding the use of deadly physical force. It is important that
   Police Officers understand these rules, yet there are some practical
   problems facing the Officer who must make a decision whether or
   not to use Deadly Physical Force.
      a. Practical Problems affecting the Officers decision:
         i. Time – very often the Officer has as little as 3 seconds
           to make his decision
         ii. Distance – very often his opponent is extremely close,
           often within arms reach and rarely more than 20 feet
           away.
         iii. Lighting – The majority of these situations take place
           at night (darkness).
         iv. Stress – The officers state of excitement, stressful
           environment contribute to the difficulty of the decision.
         v. Margin for error – Society imposes little room for
           error in cases where deadly physical force is used.
      b. As a result of the above, the vast majority of Police Officers
       rely primarily, if not exclusively, on the SELF-DEFENSE
       rules in making their decisions regarding the use of Deadly
       Physical Force.

2. A person may not use deadly physical force upon another person
   under circumstances specified in subdivision one unless:

   a. He reasonably believes that such other person is using or
    about to use deadly physical force. Even in such case,
    however, the actor may not use deadly physical force if he
    knows that he can with complete safety as to himself and
    others avoid the necessity of so doing by retreating; except
    that he is under no duty to retreat if he is:
      i. In his dwelling and not the initial aggressor.
      ii. A Police Officer or Peace Officer or a person assisting

Considerations
(See objective # 3)

Note: Power Point/ White
Board

NASSAU COUNTY

000096



**Nassau County Police Academy**

LESSON PLAN

METHODS/AIDS
KEY POINTS

a Police Officer or a Peace Officer at the latter's direction, acting pursuant to Penal Law section 35.30 or 35.15 (2a).

b. Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the Police Officer or Peace Officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force. (Penal Law 35.30 (3)

Note: Power Point/ White Board

Article 35 - DPF



Self - Defense

E. Article 35 – Deadly Physical Force

1. A Police / Peace Officer may use deadly physical force if he or she has reasonably cause to believe it necessary to:

| PREVENT / TERMINATE | ARREST / PREVENT ESCAPE |
|---|---|
| Attack of DPF | Burglary 1st *Injury is SPI not PI |
| Robbery | Arson* |
| Arson* | Kidnapping |
| Kidnapping | Escape 1st |
| Forcible Rape | "Forcible Felony" |
| Forcible Criminal Sexual Act | Felon-Escapes / Resists Custody, Armed With Deadly Weapon or Firearm |
| Burglary Dwelling / Occupied Building | Plus Attempts |
| Plus Attempts | |

Note: Power Point/ White Board

*Note: Amendment to Penal Law regarding arson of motor vehicles is not totally consistent with Article 35, which speaks of defending a PREMISE from arson.*

NASSAU COUNTY

000097

2. Duty with respect to innocent bystanders

4



Nassau County Police Academy

LESSON PLAN

METHODS/AIDS
KEY POINTS

    a. The fact that a police or peace officer is justified in using deadly physical force under circumstances prescribed in the above table, does not constitute justification for reckless conduct by such police officer or peace officer amounting to an offenses against or with respect to innocent person whom he is not seeking to arrest or retain in custody.

F. Progression of Force

    1. In their use of force, both physical and deadly physical, Police Officers are reminded that their actions will be judged under the criteria of REASONABLENESS and NECESSITY. Typically, levels of force which are available to Police Officers are as follows:

        a. Verbal Direction – this is the least intrusive level of force and may vary from a simple request to an emphatic command.

        b. Physical Direction – often, control of a person requires physical contact, the direction and extent varies with the circumstances, but may be as slight as a mere touch to as severe as a carotid restraint hold.

        c. Non-Lethal /Oleoresin Capsicum (OC) – the chemical agent in OC often has a controlling effect on a non-compliant subject because it causes a sensation of pain, it should be noted, that OC is not totally effective on all subjects and may be ineffective on mentally disabled persons, as well as individuals who are under the influence of alcohol and/or drugs. (Remind class to review department's policy contained in Training Bulletin 97-001).

        d. Impact Weapon – the actions of an opponent may compel an officer to use a more intrusive level of force, namely the Police Baton or Slapper. These weapons, especially the baton, when properly used provide a control mechanism, which also gives the officer a measure of safety. It is important to note that, depending on the circumstances, the use of the baton or slapper may constitute deadly physical force.

        e. Firearm – the highest level of force available to a police officer is the firearm. Firing this weapon at another person is restricted to those situations in which deadly physical force is justified.

NASSAU COUNTY

000098

G. Principles of The Progression

    1. A stage in the progression may be skipped due to the circumstances.



Nassau County Police Academy

LESSON PLAN

METHODS/AIDS
KEY POINTS

2. If possible, the police officer who should give the subject the opportunity to comply at each stage. Once compliance is achieved, the escalation ceases. (To do otherwise is to use excessive force.)

3. It is <u>not</u> the officer who is the aggressor. It is his opponent who is escalating the use of force by not complying, and in doing so the subject compels the officer to progress to the next level.

4. The progression is not always upwards. The situation in which force is used is often in a state of flux, therefore, the officer must continually assess the circumstances and, as appropriate, escalate or de-escalate the use of force.

Note: Show Video Tape "Civil Liability and the Use of Physical Force"#1204

5. Remember all force situations must be judged in the light of reasonableness and necessity.

H. Department Guidelines: NCPD Department Manual (Refer to Training Bulletin 51)

1. Article 5, Rule 16 – Use of Force: Members of the department shall not use Physical Force except as provided by law. In addition, members shall:

a. Not fire warning shots.
b. Not fire shots from a moving vehicle or at a moving vehicle unless:
   i. Such member or a third person is in imminent danger of death or serious injury.
   ii. Such member is in a position whereby he may reasonably fire an accurate shot at the assailant and is legally justified in using deadly physical force and innocent bystanders are not likely to be injured by an inaccurate shot or ricochet.
c. Not use deadly physical force on the basis of a notification unless the member using such deadly physical force has independent knowledge whereby the member may reasonably believe that he is legally justified in using deadly physical force.
d. Not use deadly physical force on the basis of mere suspicion.
e. Not use deadly physical force in circumstances that create a grave risk death or serious physical injury to innocent persons.
f. Not recklessly use deadly force.

NASSAU COUNTY

000099



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

I. Consequences associated with use of force

   1. One must use force in compliance with current case law, NYS
     Penal Law- Article 35, and Departmental policy and procedures.
     Consequences of using or misusing force may result in:

       a. Civil Liability
       b. Criminal Prosecution
       c. Departmental discipline
       d. Increased Scrutiny (media, public, peers, self)
       e. Unnecessary injury or death to self or others

J. Additional Points To Remember

   1. Threats

       a. In order for an officer to act upon a threat, he must
         reasonably perceive the imminent use of unlawful physical
         force. Were there any OVERT ACTS, in addition to the
         threat?
       b. Conditional threats – "Future" threats don't justify the use of
         force nor threats based on conditions.

   2. Tactics – Things happen quickly and tactical decisions must be
     made fast and the Officer is many times at a disadvantage in having
     to react to the actions of others. Many times Police Officers would
     be better advised to take make a more appropriate tactical judgment
     in handling a situation, by doing this it will counter the need for and
     escalation of physical force. For example:

       a. Family Disturbance – does the officer size up the situation
         fast enough or realize fully the circumstances before taking
         action or does he calm it? Do the officers separate the
         disputants?
       b. Making Arrests – when the officer is about to make an
         arrest, given the opportunity (which at times is difficult), does
         he/she request assistance? Ex. VTL arrest as shown in the
         videotape. If the officer had assistance on hand, might it
         obviate the need for physical force?

   3. Equipment – liability may ensue if Police Officers:

       a. Use unauthorized equipment (Ex. sap glove, unauthorized
         firearms or rounds). The Department does not condone the
         unauthorized use of equipment and weapons, but it is
         sometimes not up to the Officer who is thrust into a situation

NASSAU COUNTY

000100



*Nassau County Police Academy*

LESSON PLAN

METHODS/AIDS
KEY POINTS

where he/she is reacting and must make available objects at his/her disposal. Ex. In the house of a complainant and he knocks the Officer to the ground and the Officer utilizes an object in the house, such as a chair to defend themselves. Sometimes the circumstances warrant an Officer to utilize survival skills, yet we stress whenever possible proper training is the best approach to take.

b. Use authorized equipment improperly (Delivering a roundhouse blow to the head with a baton, using a Kel-light, steel, flashlight as a substitute for a baton). The Department does not condone utilizing equipment improperly and spends a great deal of time training Recruits and Officers in the proper application of equipment. Yet an Officer faced with a hostile person or environment, many times created by the assailant, has to react quickly and force is a result.

c. NCPD Dept. Manual -- Article 8, Rules 9 to 12.

4. Prisoners

a. Once resistance is overcome, once the subject is subdued, the officer can only use the appropriate force to maintain control. He himself must maintain SELF-CONTROL.

b. The courts expect that Police Officers will not over-react, even when faced with extreme verbal abuse.

K. Reasonableness and Necessity – The question of whether force was excessive or not is essentially resolved by the trier of facts the jury. The officer must always keep in mind that his actions will be judged according to their reasonableness and necessity.

## V. SUMMARY

A. Summarize the important concepts: make sure the instructional objectives have been met. Reasonableness and Necessity are the cornerstones of the escalation of force and this concept should be stressed.

NASSAU COUNTY

000101

8



# NASSAU COUNTY POLICE ACADEMY

## Use of Force

# #321

*Revised September 2009*

NASSAU COUNTY

000102 Commissioner of Police

## TERMINOLOGY

PHYSICAL INJURY – (Section 10.00, Subdivision 9, Penal Law):

Impairment of physical condition or substantial pain.

SERIOUS PHYSICAL INJURY – (Section 10.00, Subdivision 10, Penal Law):

A physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment or health protracted loss or impairment of the function of any bodily organ.

> Comment:
>
> *Above definition contains many words, but the significant ones are serious and protracted.*

DEADLY PHYSICAL FORCE – (Section 10.00, Subdivision 11, Penal Law):

Physical force, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

> Comment:
>
> *Deadly physical force has a connotation of death while, in fact, the law expands the meaning to include serious physical injury. The force used is of such magnitude that the injury inflicted is serious and protracted.*

## PHYSICAL FORCE

Although this term is not defined in the Penal Law, an inference can be made that is concerns that kind of force which is less than deadly physical force.

DEADLY WEAPON – (Section 10.00, Subdivision 12, Penal Law):

Any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged; or – switchblade knife – gravity knife – dagger – billy – blackjack – metal knuckles – pilum ballistic knife – metal knuckle knife- plastic knuckles.

> Comment:
>
> *These are items ordinarily designed as weapons and have virtually no other purpose. The term "loaded weapon" not only includes those weapons which are discharged by gunpowder, but also may include such items as air guns.*

NASSAU COUNTY

000103

1

DANGEROUS INSTRUMENT - (Section 10.00, Subdivision 13, Penal Law):

Any instrument, article or substance, including a "vehicle" as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.

> *Comment:*
>
> *It would be futile to attempt to define a "dangerous instrument" in absolute terms as this term applies to almost every item on earth. This term, therefore, designates any instrument, article or substance when such is used in a manner, which is readily capable of causing death or serious physical injury.*
>
> *e.g.    A fountain pen is capable of producing blindness if jammed in a person's eye.*

LICENSED OR PRIVILEGED – (Section 35.20, Subdivision 4b, Penal Law):

Persons "licensed or privileged" to be in buildings or upon other premises include, but are not limited to:

  (i)   police officers or peace officers acting in the performance of their duties; and

  (ii)  security personnel or employees of nuclear powered electric generating facilities located within the state who are employed as part of any security plan approved by the federal operating license agencies acting in the performance of their duties at such generating facilities. For purposes of this subparagraph, the term "nuclear powered electric generating facility" shall mean a facility that generates electricity using nuclear power for sale, directly or indirectly, to the public, including the land upon which the facility is located and the safety and security zones as defined under federal regulations.

RECKLESSLY – (Section 15.05, Subdivision 3, Penal Law):

A person acts recklessly with respect to a result or to a circumstance described by statute defining an offense, when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur, or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication, also acts recklessly with respect thereto.

> *Comment:*

NASSAU COUNTY

0 0 0 1 0 4

*The Penal Law designates four culpable mental states, and stipulates, unless an offense is one of strict liability, at least one of these particular mental states is essential for the commission of an offense. The sum and substance of the culpable mental state referred to as "recklessly" is to be aware of a risk and consciously disregard it.*

## ARTICLE 35: DEFENSE OF JUSTIFICATION

The use of physical force is justifiable when such conduct is required or authorized by law or judicial decree, or is performed by a public servant in the reasonable exercise of his official powers, duties or functions. Situations where the use of force is considered justified and permitted as a defense to what otherwise would be criminal conduct are based on the <u>circumstances</u> of <u>necessity</u>.

*Comment:*

*The law requires that you reasonably believe the force is necessary and does not require you to know this as a fact. The term "necessity" has certain implications as far as force is concerned. Necessity, something that cannot be done without, is a term that leads one to believe it is essential. One could look at it conversely – can this situation be handled without the use of force?*

I.    USE OF PHYSICAL FORCE

    A.    <u>Section 35.15 – Defense of Person</u>

        Any person may use physical force upon another person when he or she reasonably believes it necessary to defend himself, herself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force unless:

        1.    Force was provoked by actor; or

        2.    Actor was initial aggressor; or

        3.    Force was the product of combat not authorized by law.


NASSAU COUNTY

000105

B.   Section 35.20. Subdivision 1 – Defense of Premises

Any person may use physical force when he or she reasonably believes it necessary to prevent or terminate what he or she reasonably believes to be the commission or attempted commission of a crime involving damage to premises.

*Comment:*

*"Premises" – Section 140.00, Subdivision 1, Penal Law, includes the term "building" as defined herein and any real property. (Real Property – land and generally whatever is growing or erected upon or affixed to land).*

*"Building" – Section 140.00, Subdivision 2, Penal Law, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein; or an enclosed motor truck or an enclosed motor truck trailer.*

*e.g.   John Jones is witness to the act of someone damaging a clothing factory. He may use physical force to terminate such action.*

C.   Section 35.20. Subdivision 2 – Prevention or Termination of Criminal Trespass

A person in possession or control of any premises, or a person licensed or privileged to be thereon or therein, may use physical force upon another person when he or she reasonably believes such to be necessary to prevent or terminate what he or she reasonably believes to be the commission or attempted commission by such other person of a criminal trespass upon such premises.

*Comment:*

*In this context, the use of physical force is now restricted to certain person. See TERMINOLOGY – LICENSED OR PRIVILEGED includes Police Officers or Peace Officers – in performance of their duties as well as security personnel or employees of nuclear powered electric generating facilities located within the state who are employed as part of any security plan approved by the federal operating license agencies acting in the performance of their duties at such generating facilities. (Further – see Penal Law Article 140 dealing with the crime of Criminal Trespass).*

NASSAU COUNTY

000105

4

*e.g.*   *In order to use justifiable physical force in this situation, the person must be in possession or control of the premises. The Police Officer or Peace Officer would be justified to act in the performance of his duties because he is privileged to be thereon.*

D.   ## Section 35.25 – Prevention or Termination of Larceny or Criminal Mischief

A person may use physical force, other than deadly physical force, upon another person when and to the extent that he or she reasonably believes such to be necessary to prevent or terminate what he or she reasonably believes to be the commission of criminal mischief with respect to property other than premises.

*Comment:*

*Note the difference between Section 35.20, Subdivision 1 and this section. This section covers property other than premises (See Page 4).*

*e.g.   A person may use physical force to prevent another from intentionally damaging a vehicle.  (See Penal Law Section 155.05 – Larceny Defined – Section 145.00 – Criminal Mischief).*

E.   ## Section 35.30 – Police Officer or Peace Officer Making an Arrest or Preventing an Escape

A Police Officer or Peace Officer, in the course of effecting or attempting to effect the arrest, or of preventing or attempting to prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, may use physical force when, and to the extent, he or she reasonably believes such to be necessary to effect the arrest, or to prevent the escape from custody or in self-defense or to defend a third person from what he or she reasonably believes to be the use or imminent use of physical force.

*Comment:*

*A Police Officer or Peace Officer may use the necessary physical force in effecting an arrest for any offense.  The term offense (see Section 10.00, Subdivision 1, Penal Law) is all-inclusive – traffic infractions, violations, misdemeanors or felonies.*
*This section concerns ordinary physical force not amounting to deadly physical force.  The law is and always has been that a Police Officer or a Peace Officer may use as much physical force, other than deadly physical force, as he reasonably believes necessary.  He may use deadly physical*

NASSAU COUNTY
000107

5

*force in certain circumstances (see section dealing with deadly physical force).*

## II. USE OF DEADLY PHYSICAL FORCE

In dealing with deadly physical force we will analyze those sections that pertain to Police Officers and Peace Officers. There are three areas of law that require understanding so that deadly physical force is used consistent with the law. The first area to be considered is self-defense.

### A. Section 35.15 Penal Law – Self Defense

A Police Officer or Peace Officer may use deadly physical force upon another person when he or she reasonably believes it necessary to defend himself, herself or a third person from what he reasonably believes to be the use of or the imminent use of deadly physical force.

*Comment:*

*A Police Officer or Peace Officer as well as a person assisting such Officer at the latter's direction is under no duty to retreat, but the private person acting on his own is under a duty to retreat except when in his own dwelling.*

*This "SELF DEFENSE" concept has always been recognized as the kind of circumstances where the force used is reciprocal.*

*"PHYSICAL FORCE to cope with PHYSICAL FORCE"*

e.g. *A Police Officer or Peace Officer is confronted by a person who threatens to shoot him with what appears to be a revolver.*

*The Officer would be justified in using deadly physical force in this situation even if the revolver was found to be an imitation, since the Officer's actions were based on reasonable cause to believe it was necessary.*

e.g. *A person threatens a Police Officer on the street with a raised knife.*

*In this situation, the Police Officer can either protect himself with a lesser force, or it may be necessary to use deadly physical force. The Police Officer of necessity may or may not shoot depending upon the circumstances. Some of the circumstances to be considered are: how far away is assailant, how tall is he, how*

NASSAU COUNTY

*muscular is he, and how old is he. Of course, the size and shape of knife would also be a factor. e.g. Pen knife versus Bowie knife.*

B.   Section 35.15 – 35.20 Penal Law – Prevention or Termination of Certain Crimes

A Police Officer or Peace Officer may use deadly physical force when he or she reasonably believes that such other person is committing or attempting to commit:

- Kidnapping
- Forcible Rape
- Forcible Criminal Sexual Act
- Robbery
- Arson
- Burglary of:
  - Dwelling or
  - Occupied Building
- If the Police Officer or Peace Officer reasonably believes such to be necessary to prevent said crimes.

*Comment:*

*A Police Officer or Peace Officer, when necessary, may use deadly physical force to prevent or terminate the above mentioned crimes. If the Officer could use ordinary force to terminate, then it would not be justified to use deadly physical force. Remember the element of "necessity".*

*In these situations, the Officer must consider the risk involved to the victim when using deadly physical force.*

*The nature of these offenses presents an obvious threat of physical harm to the victim and, as such, these provisions also apply to the private person:*

*e.g.    A Police Officer or Peace Officer acting in the course of his duties is "licensed or privileged" to enter any building for the purpose of preventing or terminating a burglary and, upon doing so, is justified in using deadly physical force against the intruder if he has reasonable cause to believe it necessary.*


NASSAU COUNTY
000104

C.  Section 35.30, Subdivision 4 – Private Person Effecting an Arrest or Preventing an Escape

A private person acting on his or her own account may use physical force, other than deadly physical force, upon another person when and to the extent that he or she reasonably believes such to be necessary to effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense and who in fact has committed such offense; and he or she may use deadly physical force for such purpose when he or she reasonably believes such to be necessary to:

a.  Defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of deadly physical force; or

b.  Effect the arrest of a person who has committed murder, manslaughter in the first degree, robbery, forcible rape or forcible criminal sexual act and who is in immediate flight therefrom.

D.  Section 35.30 Penal Law – Effect Arrest – Prevent Escape

*Many of the provisions of Article 35, Subdivision 30 of the New York State Penal Law governing justification for Police Officer/Peace Officer use of deadly physical force to effect arrest or prevent escape were declared unconstitutional by the United States Supreme Court in their 1985 decision in the case of Tennessee v. Garner... refer to Legal Bulletin Number 3, dated July 3, 1985, which follows.*


NASSAU COUNTY
000110

## UNITED STATES SUPREME COURT DECISION – DEADLY PHYSICAL FORCE
### TENNESSEE v. GARNER, 1985
(Nassau County Police Department Legal Bureau Bulletin 3-1985)

In 1985 the United States Supreme Court examined a Tennessee statute that authorized police to use all the necessary means to effect the arrest of a fleeing felon. The court ruled that the use of deadly physical force to apprehend nondangerous felons constitutes an unreasonable seizure as proscribed by the Fourth Amendment.

Facts:    At 10:45 p.m. Memphis Police Officer Elton Hymon responded to a "prowler inside house" call and was met by a neighbor, who said she had heard breaking glass. Officer Hymon went to the rear of the house, heard a door slam and then saw someone run across the yard to a six foot high chain link fence. Using a flashlight, Officer Hymon was able to see the suspect's face and hands. The Officer testified that he thought the suspect was 17 or 18 years old and, though not certain, was reasonable sure that the suspect was unarmed. He called out "Police, Halt" and stepped toward the suspect, who then began to climb over the fence. Convinced that if the suspect made it over the fence he would escape, Officer Hymon fired, killing him. Money and a purse that were taken from the house were found on the suspect's body.

When he fired upon the suspect, Officer Hymon was acting pursuant to a Tennessee statute, which authorized the seizure of a fleeting felon by whatever means necessary. Specifically, the statute provides "if, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest". Tenn. Code Ann. 40-7-108 (1982). Since case law in Tennessee prohibits the use of deadly force to arrest a misdemeanant, this statute applies only to fleeing or resisting felons.

A civil action was commenced by the father of the deceased burglar in which he sought damages for violations of his son's constitutional rights. After conflicting lower court rulings, the case as appealed to the U.S. Supreme Court.

Issue:    In the use of deadly physical force to apprehend an apparently unarmed, nondangerous suspect prohibited by the fourth Amendment as an unreasonable seizure?

Answer:    Yes, "...such force may not be used unless it is necessary to prevent the escape, and the officer has probable cause to believe that the suspect poses

NASSAU COUNTY

000111

9

a significant threat of death or serious physical injury to the officer or others ... or has committed a crime involving the infliction or threatened infliction of serious physical harm". Tennessee v. Garner, 105 S. Ct. 1694 (1985).

Discussion:    "The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A Police Officer may not seize an unarmed, nondangerous suspect by shooting him dead. The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against such fleeing suspects.

It is not, however, unconstitutional on its face:

1. Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the Officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.

2. Thus, if the suspect threatens the Officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction or serious physical harm, deadly force may be used if necessary to prevent escape, and

3. Where feasible, some warning has been given. Tennessee v. Garner, Supra. (*emphasis added*)

Article 35 of the New York State Penal Law

Portions of Article 35 of the New York State Penal Law sanction the use of deadly physical force as a means of apprehending certain felons. The constitutional restrictions imposed by the U.S. Supreme Court on the use of deadly physical force in making an arrest or preventing an escape must now be applied to the New York statute that authorizes such force (P.L. § 35.30, subdivision 1). The following is a copy of section 35.30, Subdivision 1, as it is presently written.

§ 35.30 Justification: use of physical force in making an arrest or in preventing an escape.

NASSAU COUNTY

000112

10

1. A Police Officer or a Peace Officer, in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he or she reasonably believes to have committed an offense, may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest, or to prevent the escape from custody, or in self defense or to defend a third person from what he or she reasonably believes to be the use or imminent use of physical force; except deadly physical force may be used for such purposes only when he or she reasonably believes that:

   (a) The offense committed by such person was:

      (i)   A felony or an attempt to commit a felony involving the use or attempted use or threatened imminent use of physical force against a person; or

      (ii)  Kidnapping, arson, escape in the first degree, burglary in the first degree or any attempt to commit such a crime; or

   (b) The offense committed or attempted by such person was a felony and that, in the course of resisting arrest therefor or attempting to escape from custody, such person is armed with a firearm or deadly weapon; or

   (c) Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the Police Officer or Peace Officer or another person, from what the officer reasonably believes to be the use or imminent use of deadly physical force.

Impact on Section 35.30

With respect to Subdivision 1. (a), the Supreme Court ruling has narrowed the offenses for which deadly physical force may be utilized as a means of apprehension. Particularly, before deadly physical force may be used, the offenses listed in Subdivision 1. (a) must have also involved the use, attempted use or threatened use of deadly physical force. Thus, if a suspect has committed one of the offenses listed in Subdivision 1. (a) but there is no reasonable cause to believe that he used, attempted or threatened to use deadly physical force, a Police Officer will not be justified in using deadly physical force to apprehend that person.

For example, Subdivision 1. (a) (i), as presently written, authorizes the use of deadly physical force to apprehend a person who has committed a felony involving the use or attempted use or threatened imminent use of

NASSAU COUNTY

000113

*physical force* against a person. However, to fit within the restrictions now imposed by the Supreme Court, Police Officers must now read this section as authorizing the use of deadly physical force to apprehend felons where there is reasonable cause to believe they have used, attempted or threatened the imminent use of *deadly physical force*. Further, the use of deadly physical force to apprehend a person who has committed one of the offenses listed in Subdivision 1. (a) (ii) would no longer be permissible unless there was reasonable cause to believe that the person had used, attempted or threatened to use deadly physical force in the commission of the underlying offense.

The following guidelines shall be applied in the use of deadly physical force to apprehend a person who has committed an offense listed in Subdivision 1. (a) (ii):

*Kidnapping:* Deadly physical force may not be used to apprehend a person who has committed a kidnapping unless the Officer reasonably believes that person had used, attempted or threatened to used deadly physical force in the commission of the kidnapping.

*Arson:* Deadly physical force may not be used to apprehend a person who has committed arson in the third degree or arson in the fourth degree.

*Escape in the first degree:* Deadly physical force may not be used to apprehend unless the Officer reasonably believes the offense underlying the escape was one in which the person used, attempted or threatened to use deadly physical force.

*Burglary in the first degree:* Deadly physical force may not be used to apprehend a person who has caused only physical injury to a nonparticipant in the commission of a Burglary in the first degree. Deadly physical force may be used if the Officer reasonably believes the person has caused serious physical injury to a nonparticipant or if any of the remaining three aggravating factors were present in the commission of the Burglary in the first degree.

§ 35.30, Subdivision 1. (b) and 35.30, Subdivision 1. (c) – *(Referring to pg12 "Impact on section. 35.30")*
*Subdivisions 1. (b) and 1.(c) are consistent with the court's ruling and therefore are not affected by this case.*

Comment:     *It should be noted that the rules concerning the use of deadly physical force to defend against deadly physical force and to prevent/terminate criminal behavior shall remain unchanged as they were not addressed in this case.*

NASSAU COUNTY

000114

12

*Reasonable Cause*

*Probable Cause*

Reasonable Cause to believe that a person has committed an offense exists when:

1. Evidence or information which appears reliable

2. Discloses facts or circumstances

3. Collectively of such weight and persuasiveness

4. As to convince a person of ordinary intelligence, judgement, and experience

5. That it is reasonably likely that such offense was committed and that such person committed it.

*Consider:*

| | |
|---|---|
| *Victim's Report* | *Witness Report* |
| *Time of Day* | *Suspicious Circumstances* |
| *Proximity to Crime Scene* | *Modus Operandi* |
| *Confidential Information Report* | *Police Radio Broadcast* |
| *Knowledge of Crime in Area* | *Known Criminals* |
| *Strangers* | |

NASSAU COUNTY

000115

GUIDELINES ON THE USE OF DEADLY FORCE

TRAINING BULLETIN NUMBER 51 – JUNE ● 1979

## GUIDELINES ON THE USE OF DEADLY FORCE

*In recent years, police officers and police departments have been recipients of an ever-increasing barrage of accusations and denunciations concerning alleged police use and misuse of deadly physical force. A large portion of the difficulty in this area has stemmed from confusion and misconception on the part of some segments of our society as to the exact extent of a police officer's legal authority to use deadly force. Police officers in Nassau County can be proud of their fine record in the safe use of their firearms. However, this does not mean that we can lessen our vigilance, or become relaxed. Firearms are extraordinarily dangerous. Therefore, in using our firearms we must exercise extraordinary care to prevent injury to innocent bystanders. This bulletin is designed to summarize a police officer's powers regarding the use of deadly physical force, and also to provide some guidance for police officers in potential encounter situations.*


NASSAU COUNTY

000116

## DEPARTMENTAL POLICY

1.  <u>*WARNING SHOTS SHALL NOT BE FIRED*</u> – *Although there is little empirical data on the subject, it is becoming widely believed that warning shots may cause a fugitive to run faster rather than slower. More importantly, the danger of ricochet from an errant bullet far outweighs the utility of a warning shot. This danger is becoming more acute as the character of Nassau County becomes more urban in nature.*

    e.g.   *An unarmed 14-year-old boy, when stopped in a stolen car by a police officer, abandoned the car and ran across an open snow covered field. The police officer gave chase and fired warning shots – the last shot was fired unintentionally when the police officer stumbled and fell on slippery terrain. The bullet traveled some distance, striking an innocent bystander, causing permanent paralysis. The bystander sued the police officer for negligence. Verdict: for the Plaintiff bystander.*

    *In another case, a police officer fired a warning shot at a fleeing shoplifter in a crowded midtown street. The bullet ricocheted off a window ledge and struck a three-year-old girl who was shopping with her mother. Fortunately, the girl was only injured slightly. Verdict: for the Plaintiff bystander.*

    <u>POINT</u>

    *FIREARMS ARE DANGEROUS. THEY SHOULD NEVER BE USED TO WARN, THREATEN OR BE USED AS A BLUDGEON. SIRENS, WHISTLES, ETC. MAY SERVE THE SAME WARNING FUNCTION. It is also noteworthy that <u>in neither of the above examples were the police officers legally justified</u> in using deadly physical force. Also note that a bullet from a .38 caliber revolver can travel one quarter of a mile and still cause serious physical injury. This is a conservative estimate.*

11.  <u>*SHOOTING FROM MOVING VEHICLES OR AT MOVING VEHICLES*</u>

    <u>*General Rule*</u> *– Shots should not be fired by police officers from a moving vehicle or at a moving vehicle <u>UNLESS</u>:*

NASSAU COUNTY

000117

a.   The police officer or a third person is in imminent danger of death or serious physical injury; or,

b.   The police officer is in a position whereby he may reasonably fire an accurate shot at the fugitive _and_ is legally justified in using deadly physical force _and_ innocent bystanders are not likely to be injured by an inaccurate shot or ricochet, or loss of control of the vehicle which would be likely to ensue from the disabling of the operator.

e.g.   About 8:30 one summer evening, two police officers in a patrol car ordered the driver of a stolen car to stop. The driver instead sped away. A brief chase of up to 65 m.p.h. ensued, during the course of which the fugitive several times cut off the police car, almost causing it to crash. While still pursuing the vehicle, but at a safer distance, one of the police officers began firing at the vehicle. At the moment one of the shots was fired, the police car hit a bump in the road with the result that the shot struck another motorist causing his car to go out of control and kill two pedestrians who had been waiting at a bus stop. Negligent action – Verdict: for the Plaintiff bystanders.

In the above case, neither the police officer nor the third persons _at the time the shots were fired_, were in imminent danger of death or serious physical injury.

e.g.   Three police officers began pursuit of a severely deranged woman wanted for Reckless Endangerment First Degree and a possible Attempted Murder. The police officers knew that the woman had a few hours earlier either intentionally or evincing a depraved indifference to human life, driven her car over one of her neighbors, severely injuring him, and she fled the scene bent on self destruction. The police officers spotted the woman driving her car in rush hour traffic on Hempstead Turnpike. In the subsequent pursuit that covered several miles, the car driven by the woman careened off parked cars, mounted sidewalks endangering pedestrians, and ran past numerous red traffic signal lights. The police officers finally apprehended the woman when she was involved in a minor accident. When later asked about the possibility of shooting at this woman to bring about her apprehension, the numerous police officers who joined in the chase unanimously agreed that shooting at this vehicle under the circumstances would have created a grave risk of serious physical injury to innocent bystanders.

POINT

NASSAU COUNTY

000118

*THIS DOES NOT MEAN THAT A POLICE OFFICER MUST PLACE HIMSELF IN A POSITION WHEREBY HE IS IN IMMINENT DANGER OF DEATH OR SERIOUS PHYSICAL INJURY. It merely means that shooting from a moving vehicle generally involves a substantial risk of serious physical injury to innocent bystanders. Before firing a weapon at a fleeing vehicle, a police officer must consider numerous factors including the number of people or vehicles present, the character of the area (residential or business), and the time of the day or night. Clearly there is a significant difference between firing a weapon in a deserted factory area at 2:00 A.M., and firing a weapon on Sunrise Highway at 6:00 P.M., on Hempstead Turnpike at noon, or in the area of schools, churches, taverns, meeting halls, stores, residences, etc. In any case, the officer must also consider the degree of control he can exercise over his weapon under the existing conditions.*

III.  <u>NOTIFICATIONS – DEADLY PHYSICAL FORCE SHOULD NOT BE USED ON THE BASIS OF A NOTIFICATION UNLESS THE OFFICER USING SUCH DEADLY HPYICAL FORCE HAS INDEPENDENT KNOWLEDGE WHEREBY HE MAY REASONABLY BELIEVE THAT HE IS LEGALLY JUSTIFIED IN USING DEADLY PHYSICAL FORCE.</u>

e.g  *A police officer received a call directing him to go to a local service station "Stickup". Upon arriving at the service station the police officer encountered an excited attendant who described three men whom he said robbed him and fled in a green sedan. The police officer immediately broadcasts a notification to "arrest for a stickup a few moments ago, etc...", briefly describing the assailants and the getaway car. A few miles away a police officer observed the car mentioned in the notification and began pursuit. Shots were fired at the fleeing car. Shortly thereafter the suspected car was involved in a minor traffic accident and the suspects were apprehended. Subsequent investigation revealed that no stickup occurred, but that the gas station attendant was servicing a car at the gas station pumps and three teenagers took $21.00 from the gas station register and fled in a green sedan. (A $21.00 Petit Larceny)*

<u>POINT</u>

*THIS DOES NOT MEAN THAT AN OFFICER MUST PLACE HIMSELF IN IMMINENT DANGE OF LIFE OR LIMB OR THAT UNER SUCH CIRCUMSTANCES HE SUOULD NOT PROTECT HIMSELF OR BE <u>PREPARED</u> TO USE DEADLY FORCE. It merely means that there are significant differences between "alarms" and "notifications". A different case arises if the fleeing perpetrator attempts to "run down" police officers, or he displays a weapon, or he places a*

NASSAU COUNTY

000119

*police officer or another in danger of <u>imminent</u> death or serious physical injury.*

IV.  <u>DEADLY PHYSICAL FORCE CAN NEVER BE USED ON THE BASIS OF MERE SUSPICION</u>

e.g.  *A police officer on patrol heard glass breaking and saw a male running from the direction of the sound. He ordered the male to stop and upon his failure to do so he fired, hitting him in the head, killing him instantly. Subsequent investigation revealed the youth and some companions had been throwing some bottles against a building.*

e.g.  *A robbery of a gas station occurred and the perpetrator fled on foot. An alarm was broadcast. About an hour later a car was stolen a few miles from the scene of the robbery. Based on this information, may a police officer pursuing the stolen vehicle use deadly physical force?*

Ans.  *NO!  The police officer may not use deadly force based on <u>mere suspicion</u> of a connection between the stolen vehicle and the Robbery. The facts as presented are insufficient to take this fact pattern out of the suspicion category.*

<u>POINT</u>

*BEFORE DEADLY PHYSICAL FORCE MAY BE USED, A POLICE OFFICER MUST BE LEGALLY JUSTIFIED IN USING SUCH FORCE. <u>NEVER</u> USE DEADLY PHYSICAL FORCE ON THE BASIS OF SUSPICION THAT A CRIME WAS COMMITTED – NO MATTER HOW SERIOUS THE CRIME IS THAT YOU MAY SUSPECT. A hunch, a notion or suspicion that the person being pursued committed a crime for which deadly physical force may be used is never enough. If you are in doubt about the legality of using deadly physical force in a certain circumstance ---- DON'T USE IT!! – Again, this does not mean that you should <u>not be prepared</u> to use deadly physical force if such force is legally justified for either apprehension or self-defense.*

NASSAU COUNTY

000120

18

## Progression of Force

In their use of force, both physical and deadly physical, Police Officers are reminded that their actions will be judged under the criteria of REASONABLESNESS and NECESSITY. Typically, levels of force, which are available to Police Officers, include:

1. <u>Verbal Direction</u> – This is the least intrusive level of force and may vary from a simple request to an emphatic command.

2. <u>Physical Direction</u> – Often, control of a person requires physical contact: the direction and extent varies with the circumstances, but may be as slight as a mere touch to as severe as a carotid restraint hold.

3. <u>Non-Lethal</u> – Mace – The chemical agent in Mace often has a controlling effect on a non-complain subject because it causes a sensation of pain; it should be noted, however, that Mace is not totally effective on all subjects and may be ineffective against mentally disabled persons, as well as individuals who are under the influence of alcohol and/or drugs.

4. <u>Impact Weapons</u> – The actions of an opponent may compel an Officer to use a more intrusive level of force, namely the police baton or slapper. These weapons, *(especially the baton)*, when properly used, provide a control mechanism which also give the Officer a measure of safety. It is important to note that, depending on the circumstances, the use of a baton or slapper may constitute deadly physical force.

5. <u>Firearm</u> – The highest level of force available to the Police Officer is the firearm. Firing this weapon at another person is restricted to those situations in which deadly physical force is justified.

NASSAU COUNTY

000121

# PROGRESSION OF FORCE



NASSAU COUNTY

000122

NASSAU COUNTY POLICE DEPARTMENT RULES AND REGULATIONS
PERTAINING TO THE USE OF FORCE

Article 5, Rule 16.  Use of Force

Members of the Department will not use Physical Force except as provided by law.

In addition, members shall:

1.   Not fire warning shots.

2.   Not fire shots from a moving vehicle or at a moving vehicle unless:

    a.   Such member or a third person is in imminent danger of death or serious physical injury.

    b.   Such member is in a position whereby he may reasonably fire an accurate shot at the assailant and is legally justified in using deadly physical force and innocent bystanders are not likely to be injured by an inaccurate shot or ricochet.

3.   Not use deadly physical force on the basis of a notification unless the member using such deadly physical force has independent knowledge whereby the member may reasonably believe that he is legally justified in using deadly physical force.

4.   Not use deadly physical force on the basis of mere suspicion.

5.   Not use deadly physical force in circumstances that present a grave risk of death or serious physical injury of innocent persons.

6.   Not recklessly use deadly physical force.

Article 17, Rule 2. – Use of Force in Order to Effect an Arrest

As herein provided, a Police Officer may use such force as is legally justifiable.

Teletype Order Number 105 of 1987 – Carotid Restraint

Also known as the sleeper hold – shall be used by members of the Force only when deadly physical force is lawful and appropriate.

POLICE DEPARTMENT COUNTY OF NASSAU, N.Y.
TELETYPEWRITER ALARM SHEET

PDCK 72 REV 5/86

PREPARE IN DUPLICATE

| | |
|---|---|
| RECORD BUREAU NO. | DETECTIVE DIVISION NO. |
| WARRANT NO. | ALARM NO. |
| OTHER NO. | DATE October 5, 1992 |

TELETYPE ORDER NO. _____
TELETYPE NOTIFICATION (X)
AMENDMENT NO. _____
CHIEF OF OPERATIONS ORDER NO. _____
OTHER _____

FILE NO. 3212  P.A. JFG:mn  *(Page 1 of 2)*

TO ALL COMMANDS

## SAN DIEGO STUDY ON IN-CUSTODY DEATHS

The San Diego Police Department recently conducted a study as to the incidence of restraint related, in-custody deaths. In their research, the San Diego Police Department contacted the Nassau County Police Department as well as 141 other departments across the nation.

The findings of the study offer valuable information on the dangers of taking certain *"high risk"* subjects into custody, particularly in situations where force and/or restraint may be necessary. While information from the study will be more formally integrated into Department training programs, members of the Department should be aware of the following significant observations drawn from the research: .

 ▸ Unintentional deaths which occur while a subject is in police custody usually take place after a subject has demonstrated bizarre and/or violent behavior, and has been restrained. The deaths appear similar to sudden death in infants.

 ▸ There appears to be a link between the subject's berserk behavior and a greatly increased risk of death following the application of any type of restraint, even those procedures involving only minor or moderate levels of force.

 ▸ Subjects under the influence of cocaine and/or other stimulant drugs represent a high-risk group, particularly when their custody involves restraint. Terms used to describe their condition include *"cocaine psychosis"* and *"excited delirium"*. These subjects may display a variety of symptoms including bizarre, violent behavior, aggression toward objects, paranoia, superhuman strength, delirium, psychosis, high pulse rate, high blood pressure, elevated temperature *(profuse sweating)*, and dilated pupils.



NASSAU COUNTY
000124

POLICE DEPARTMENT COUNTY OF NASSAU, N.Y.
TELETYPEWRITER ALARM SHEET

PDCR 72 REV 8/86

PREPARE IN DUPLICATE

TELETYPE ORDER NO. _____
TELETYPE NOTIFICATION (X)
AMENDMENT NO. _____
CHIEF OF OPERATIONS ORDER NO. _____
OTHER _____

| RECORD BUREAU NO. | DETECTIVE DIVISION NO. |
|---|---|
| WARRANT NO. | ALARM NO. |
| OTHER NO. | DATE October 5, 1992 |
| FILE NO. 3212  F.A. JFG:mn  (Page 2 of 2) | |

TO ALL COMMANDS

## SAN DIEGO STUDY ON IN-CUSTODY DEATHS
*(continued)*

▸   Certain subjects appear to have a higher risk of death when the carotid restraint is applied. Included in this high-risk group are those with cardiac disorders, those with a history of seizures, manic-depressive psychotics particularly those in the manic state, persons under the influence of alcohol and/or other drugs such as PCP, LSD, amphetamines and cocaine.

▸   One of the dangers associated with transporting a high-risk subject who is being restrained while in custody is the possibility of *"positional asphyxia"*; this can occur if the body is restrained in such a manner as to interfere with respiration. A significant danger is cited in situations where a high-risk subject under maximum restraint is transported in the prone position in the back of a police car.

With the prevalence of drugs in our society, the number of high risk subjects increases. While it may be necessary to use force and/or restraints to take a high-risk subject into custody, members should be guided accordingly in transporting these individuals and with ensuring appropriate medical care.

| TO BE TRANSMITTED | DATE<br>October 5, 1992 | SIGNED |
|---|---|---|
| | TIME<br>Forthwith | TITLE<br>Commissioner of Police |

NASSAU COUNTY

000125

COMMENTARY
By Mark H. Moor

## POLICE ACCOUNTABILITY AND
## THE 'DIRTY DIRTY DEAL'

The unforgettable images of Los Angeles police officers beating Rodney King have stirred fresh concerns about police brutality and racism. The small riot in Washington, D.C., triggered by a black police woman's shooting of a Hispanic resident who may (or may not) have been coming at her with a knife, has recalled an important lesson of the '60s: What ever the root causes of civil disturbances, their immediate cause is often police actions the local community finds excessive, unjust or discriminatory.

The two incidents confront local leaders anew with the question of what can be done to reduce police misconduct and, equally important, to strengthen public confidence in the police.

The answer will be found only when community leaders, elected officials and police chiefs recognize that a police department's moral character is not forged, and the quality of its relations with the community is not founded, on its response to a few notorious incidents. Rather, these fundamentals are built upon the thousands of routine daily interactions between the police and citizens. Consequently, the best way to assure rectitude in policing is to focus less on mechanisms to deal with major lapses in police conduct, such as the traditional civilian review boards, and more on improving the quality of those day-to-day interactions.

In working towards this goal, officials need to recognize that police misconduct stems not just from the brutality of individual officers, but also from community ambivalence about the values they want the police to embody.

The community claims to want disciplined police officers, impartial in their enforcement of the laws and skilled in the restrained use of force. But it also wants protection from criminals. The desire for protection tempts the police and the citizenry to collude in what I call the "dirty deal": So long as the police are willing to put their lives on the line to protect the good citizens from the bad, the good citizens will not ask too many questions about how they do it. Sustained by this tacit understanding, the police feel justified in using unwarranted force against those they suspect of crimes.

On occasion, however, when an episode of brutality or racism is forced into the light, the public suddenly rediscovers its commitment to the values of discipline and restraint. Those brief periods of public indignation do much mischief. Individual officers will be prosecuted. Police leaders will be scapegoated. The capacity of the police force to do its job will decline as it is subjected to ever more exacting regulations. Worst of all, the police will feel betrayed by a public that suddenly changed the rules.

In such circumstances, the establishment of civilian review boards tends only to perpetuate the deep sense of injustice felt by police. That is what dooms most of them to police hostility in the short run, and irrelevance over the long run. By themselves, they are not strong enough to strike at the root of the dirty deal that tacitly guides police conduct. They can do little beyond producing more scapegoats.

The alternative to civilian review boards is for community leaders, elected officials and police chiefs to establish a new deal between the police and the community, with much broader and more continuous accountability than review boards can achieve. One such deal is called "community policing".

Under this philosophy, uniformed officers are encouraged to get out of their cars and become more aware of the concerns of the community, more dependent on it for their own security, and more accountable to it. A further result is that the police work harder on promoting civility in public areas, on stilling citizens' fears through a reliable presence, and on providing emergency services ranging from first aid to locating lost children, as well as dealing with criminals. They will also commit themselves to the protection of citizens' rights, for they understand that, in the end, the most important task of a public force is to protect those rights. They know that the only thing that distinguishes them from vigilantes is this commitment.

Establishing a shared commitment to community policing is a far more promising approach to reducing instances of misconduct and improving police-community relations that

NASSAU COUNTY

000126

establishing civilians review boards, for two reasons. First, it founds the relationship between the police and the community on truer and more enduring values than those associated with the "dirty deal". Second, it gives organizational sanction and opportunity for individual officers to participate daily in the kinds of interactions that a police force should have with its citizen-clients: a relationship of service and accountability.

*Mark H. Moore is the Guggenheim Professor of Criminal Justice Policy and Management at Harvard University's John F. Kennedy School of Government. He is also co-author of Beyond 911: A New Era for Policing.*

GOVERNING • August 1991

NASSAU COUNTY

000127