UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IYANNA DAVIS,

                      MEMORANDUM AND ORDER

            Plaintiff,                 CV 11-0076

         -against-                (Wexler, J.)

COUNTY OF NASSAU, NASSAU COUNTY
POLICE OFFICER MICHAEL CAPOBIANCO,
SGT. HERMANN, POLICE OFFICER CARL
CAMPBELL, POLICE OFFICER DWIGHT
BLANKENSHIP, POLICE OFFICER JOSEPH
GRELLA, POLICE OFFICER JOHN DOES #1-5,
NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE INVESTIGATOR THOMAS BIDELL,
NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE INVESTIGATORS JOHN DOES #2-5,
NASSAU COUNTY ASSISTANT DISTRICT
ATTORNEY JOHN DOES #1-5,

            Defendants.
-----------------------------------------------------------------X
APPEARANCES

       FRIEDMAN, HARFENIST KRAUT & PERLSTEIN
       BY: STEVEN J. HARFENIST, ESQ., CHARLES HORN, ESQ.
       Attorneys for Plaintiffs
       300 Marcus Avenue, Suite 2E1
       Lake Success, New York 11042

       JOHN CIAMPOLI, ESQ., NASSAU COUNTY ATTORNEY
       BY: DIANE C. PETILLO, ESQ. DEPUTY COUNTY ATTORNEY
       Attorney for Defendants
       One West Street
       Mineola, New York 11501

WEXLER, District Judge

       This is a civil rights lawsuit commenced by Plaintiff Iyanna Davis ("Plaintiff") who

1

suffered a gun shot wound during a police search of her apartment. In addition to setting forth federal civil rights claims pursuant to 42 U.S.C. §1983 ("Section 1983"), Plaintiff alleges several causes of action pursuant to New York State law. Named as Defendants are Police Officers Michael Capobianco ("Capobianco"), Carl Campbell ("Campbell"), Joseph Grella ("Grella"), Dwight Blankenship ("Blankenship") and Nassau County Police Sargent Hermann ("Hermann"). Also named as a Defendant is Thomas Bidell ("Bidell"), an investigator with the Nassau County District Attorney's Office.[1]

Presently before the court is Defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment.

## BACKGROUND

I. Factual Background

The facts set forth below are drawn from documents properly before the court in the context of this motion, including deposition transcripts and the parties' statements pursuant to Rule 56.1 of the rules of this court.

    A. Investigation and Issuance of the Warrant

In April of 2010, Defendant Bidell began an investigation of Reginald Lecator ("Lecator"), an individual believed to have been involved in the sale of drugs. The investigation led to Lecator selling drugs to a confidential informant on April 14, 15 and 19, 2010. Each purchase was made at a house located at 31 Lafayette Street in Hempstead, New York (the

---

[1] Plaintiff's amended complaint also named the County of Nassau as well as the Nassau County District Attorney's Office. Plaintiff has now dismissed all claims of municipal liability. Additionally, Plaintiff's complaint named several "Doe" defendants who have never been identified.

"Premises"). On May 5, 2010, based upon information supplied by Bidell, a Justice of the Supreme Court of the State of New York signed a warrant authorizing a search of the Premises (the "Warrant"). The Warrant was a "no knock" warrant, authorizing law enforcement to enter the Premises, within ten days of its issuance without giving notice of their authority and purpose. The Warrant describes the Premises as "a two-story residential home . . . ." The number 31 is stated to appear over a black mailbox located near the front door. The Warrant authorized the search of "the entire target premises described." The Premises is nowhere described in the Warrant as a two-family home, and makes no mention of whether a separate search of the upstairs is authorized. Instead, the Warrant refers broadly to a search of the entire house.

B.      Post-Issuance Investigation of the Premises

On May 10, 2010, Bidell was driving by the Premises and noticed that there were two mailboxes in front of the house. Bidell thereafter asked a confidential informant to assist him in determining whether or not the Premises was a single family home. The informant told Bidell that he believed the Premises to be a single family home. On the next day, May 11, 2010, Bidell returned to the Premises accompanied by two fellow investigators. It was Bidell's intent to determine whether the second floor of the Premises was a separate residence. To further this investigation, Bidell employed a ruse, planning on telling whoever answered the door that he and his fellow investigators were from the Nassau County family services department and were investigating a complaint about a crying child.

When Bidell arrived at the Premises on May 11, 2010, he was greeted at the front door by a woman identified as Roshandra Lecator ("Ms. Lecator"). After being invited to enter the first floor, Bidell asked Ms. Lecator if the women residing upstairs were home. He was directed to

walk out of Ms. Lecator's kitchen door and told to knock on a door located off an enclosed porch. Bidell knocked on the door leading to the second floor of the Premises. The door was answered by Theresa Tompkins who invited Bidell and the two investigators inside. Not wanting to raise suspicion as to the true nature of his visit, Bidell kept his visit short. He has testified that he left the Premises without making a clear determination in his mind as to whether the Premises was a single or two family home.

On May 12, 2010, Bidell met with members of the team preparing to execute the Warrant. Bidell testified that he advised the team members that while he observed two mailboxes outside of the Premises, he was unable to determine if it was a single or two family home. He did advise the team members, however, that the drug sales to the confidential informant took place on the first floor. Defendant Capobianco, one of the officers who ultimately executed the Warrant, stated that it was "sketchy" as to whether the first and second floor living spaces at the Premises were linked, and that he did not know whether the Premises was, in fact, a two family home.

### C. Execution of the Warrant

The Warrant was executed on May 13, 2010, by members of the Nassau County Police Force Bureau of Special Operations ("BSO") and the Town of Hempstead Police Department. Defendant police officers Capobianco, Campbell, Grella, Blankenship and Hermann were all involved in the execution of the Warrant. Investigator Bidell was also present at the Warrant's execution.

Pursuant to the terms of the Warrant, the team entered the front door of the first floor of the Premises without warning. A ram device was used to open the front door and officers

entered the home. After entering the Premises, Defendant Campbell followed Defendants Blankenship and Grella though a kitchen door where they encountered a set of stairs blocked by a refrigerator. Blankenship yelled "alternate breach," and the team exited the Premises, proceeding around the back of the house to gain entry to the second floor. A battering ram was used to enter the back door and the team again entered the Premises.

At the time of the execution of the Warrant, Plaintiff was on the second floor of the Premises, along with two other women. Grella and Blankenship saw a woman (not Plaintiff) on the second floor and told her to get down on the ground. After the primary search of the Premises was conducted, Defendants Capobianco and Campbell went to the second floor of the Premises to conduct an additional search thereof. Defendants Grella, Blankenship and Hermann then proceeded to search the basement of the house, leaving only Campbell and Capobianco on the second floor.

D. The Shooting of Plaintiff

After the other officers left the second floor, Campbell and Capobianco remained on that level, near a closed closet door. Capobianco was stationed directly outside of the door. Defendants claim that the officers identified themselves as police, and that Campbell attempted but was unable to open the closet door, because it was being pulled closed from the inside. Plaintiff, who was hiding inside the closet denies hearing the police identify themselves and also denies pulling the door shut from the inside. Campbell states that he was finally able to pull open the door enough to see Plaintiff inside the closet. Defendants state that when the closet door was opened Capobianco fell backwards, accidentally discharged his weapon and shot Plaintiff. Plaintiff acknowledges that Capobianco did not intend to fire his weapon. She states, however,

5

that the discharge of the weapon was a reckless act constituting the use of excessive force under the circumstances.

II.     Plaintiffs' Complaint

Plaintiffs' complaint states causes of action pursuant to Section 1983 and New York State Law. The Section 1983 claims allege unreasonable search, false arrest, the use of excessive force and the violation of Plaintiff's substantive due process rights. Plaintiff also alleges state law claims of assault, battery, false arrest and negligence.[2]

III.    The Motion

Defendants move for summary judgment as to all claims. Specifically, it is argued that any claim sounding in unreasonable search must fail because Defendants were acting pursuant to a valid warrant. The excessive force claim is alleged to be subject to dismissal because Plaintiff cannot prove that the discharge of Capobianco's weapon was an intentional act. The parallel state law claims for assault and battery are sought to be dismissed on the ground that Plaintiff cannot show that Defendants acted with the intent necessary to sustain those claims. Defendants also argue that, in any event, they are entitled to judgment on the ground of qualified immunity.

Plaintiff argues that the presence of material issues of fact preclude a grant of summary judgment. Specifically, Plaintiff argues that there is sufficient evidence to show that Bidell and the police knew that the Premises was a two family residence, and could not therefore rely on the Warrant to justify any search of the second floor. Plaintiffs also argue that the parties' dispute as to the facts immediately preceding the shooting of Plaintiff precludes summary judgment as to

---

[2] Plaintiff has abandoned her claims of municipal liability and her claim for defamation.

whether or not there was a use of excessive force.

## DISCUSSION

I. <u>Standards on Motion For Summary Judgment</u>

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c) states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>Reiseck v. Universal Commc'ns of Miami, Inc.</u>, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing entitlement to summary judgment. <u>See</u> <u>Huminski v. Corsones</u>, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 122 (2d Cir. 2004); <u>see Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002), quoting, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (emphasis in original).

7

II.  Section 1983 Claim of Illegal Search

   A.  Legal Principles

For a search warrant to be Constitutionally valid: (1) it must be issued by a "neutral, disinterested magistrate," (2) the person seeking the warrant must establish probable cause to believe that the evidence sought will aid in the prosecution of a crime, and (3) the warrant must "particularly describe the things to be seized, as well as the place to be searched." Lynch v. City of Mount Vernon, 567 F. Supp.2d 459, 464 (S.D.N.Y. 2008) (citations omitted); see also Leon v. City of New York, 2010 WL 2927440 *2 (S.D.N.Y. 2010).

There is a presumption that the issuance of a warrant is reasonable and establishes probable cause. See Sanseverino v. Chrostowski, 2012 WL 4894038 *6 (D. Conn. 2011). A plaintiff seeking to defeat that presumption, must make a "substantial preliminary showing" that material false statements or omissions necessary to the probable cause determination were made "knowingly and intentionally, or with reckless disregard for the truth." Southerland v. City of New York, 680 F.3d 127, 146–47 (2d Cir. 2012) (internal quotation marks and citations omitted); see Pina v. City of Hartford, 2009 WL 1231986 *4 (D. Conn. 2009).

   B.  Disposition

The court has no doubt that the Justice issuing the Warrant was a "disinterested magistrate," and that the information provided to him at the time of issuance was sufficient to establish probable cause to believe that drugs were being sold at the Premises. The issue raised by Plaintiff here is whether, after issuance of the Warrant, law enforcement personnel came into possession of information to negate a finding that the Warrant was proper in describing the scope of the search. More specifically, Plaintiff argues that the actual knowledge present here as to the

8

layout of the Premises negates a showing that there was probable cause to believe there was criminal activity taking place on the second floor of the Premises. For their part, Defendants argue: (1) that there is no evidence that they came into possession of information negating probable cause as to the search of the entire Premises and, (2) that, in any event, facts surrounding the execution of the Warrant are sufficient to sustain the extent of the search performed.

The court holds that there are issues of fact that preclude the entry of summary judgment as to the validity of the search conducted on the second floor of the Premises. Importantly, with respect to the search, Plaintiff has come forward with evidence suggesting that Defendants may have come into possession of information after issuance, but before execution of the Warrant negating the propriety of a search of the entire Premises. On the other hand, Defendants have set forth evidence that the search of the second floor of the Premise was permissible. The court cannot say whether ultimately, at trial, the Warrant or the events of the day of execution will or will not be sufficient to support the Constitutionality of the search. The court holds only that summary judgment, based upon the Warrant on its face, is not warranted.

III.  Excessive Force

    A.  Legal Principles

A plaintiff seeking to establish a section 1983 claim for excessive force must show that "the force used was excessive or unreasonable in light of the circumstances." Williams v. City of Mount Vernon, 428 F. Supp.2d 146, 157–58 (S.D.N.Y. 2006); see Graham v. Connor, 490 U.S. 386, 395-96 (1989). When determining the issue of reasonableness, the court bears in mind "that police officers are often forced to make split-second judgments—in circumstances that are tense,

uncertain, and rapidly evolving . . . ." Graham, 490 U.S. at 397. When determining whether force used was reasonable "the nature and quality of the intrusion" must be balanced against "the countervailing governmental interests at stake." Id. at 396; see Lynch v. City of Mount Vernon, 567 F. Supp.2d 459, 467 (S.D.N.Y. 2008). Importantly, officers executing a search warrant seeking contraband "have the authority to detain the occupants of the premises while a proper search is conducted." Pina, 2009 WL 1231986 *7, quoting, Muehler v. Mena, 544 U.S. 93, 98 (2005). That authorization includes the right to use reasonable force to detain any individual while the search is effectuated. Id. at 98-99.

### B. Disposition

The court's inability to determine the particular facts that took place on the day the Warrant was executed precludes a grant of summary judgment as to the Constitutionality of the force used. The parties have come forward with markedly different versions of the events immediately preceding the shooting. The court cannot accept one version of the facts as true at this point in the proceedings. Instead, the court must leave that task to the trier of fact, and therefore denies summary judgment as to the claim of excessive force.

## IV. Qualified Immunity

### A. Legal Principles

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001), quoting, Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The doctrine shields government officials from liability for civil damages resulting from their performance of discretionary functions, unless their conduct violated a clearly established constitutional right. See Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1995). A

right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007), quoting, Saucier, 533 U.S. at 202. Qualified immunity allows for dismissal of a lawsuit if the court can determine that it was 'objectively reasonable' for the defendant to believe that his actions were lawful at the time of the challenged act. Lennon, 66 F.3d at 420, quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Where the qualified immunity question turns on statements made in support of an affidavit, a defendant who makes erroneous statements of fact "is nonetheless entitled to qualified immunity unless the false statements in the affidavit were necessary to the finding of probable cause." Southerland v. City of New York, 680 F.3d 127, 143 (2d Cir. 2012) (citations omitted). In such cases, qualified immunity is warranted only if, "after correcting for the false or misleading statements, the affidavit accompanying the warrant was sufficient to support a reasonable officer's belief that probable cause existed." Id. at 143–44.

B. Disposition

i. The Search

As noted, the Warrant provided for a "no knock" entry and authorized a search of the "entire" Premises. There is no question as to the propriety of the use of a no-knock entry under the circumstances here. Indeed, there was clearly probable cause, at the time of the issuance of the warrant, to believe that there were drugs being sold out of the Premises. The no-knock entry was justified by the possibility that evidence would be destroyed.

At issue here, however, is the search of the "entirety" of the Premises. The officers knew that drugs were being dealt out of the first floor of the Premises. It cannot be said, in light of the

11

evidence presented, whether the Warrant is sufficient to afford qualified immunity to the officers choosing to search the second floor of the Premises. If, as argued by Plaintiff, Defendants came into possession of clear information after issuance but before execution of the Warrant, that the second story of the Premises was a completely separate residence not involved in the drug trade, it may be that a reasonable officer would not have been privileged to search the second floor of the Premises. On the other hand, the facts may very well support a holding that it was objectively reasonable to conduct a search of the entire Premises. Because the court cannot decide any issue of fact regarding a reasonable officer's belief as to the search conducted, summary judgment on the ground of qualified immunity cannot be granted.

    ii.    The Use of Force

The issues of facts surrounding the shooting of the Plaintiff also preclude a grant of summary judgment based upon the doctrine of qualified immunity. The parties' conflicting accounts of the facts immediately preceding the shooting prevent the court from stating whether the acts here were objectively reasonable under the circumstances. Summary judgment on the ground of qualified immunity as to the claim of excessive force is therefore denied.

V.    Claims Against Individual Defendants

    A.    Excessive Force

It is clear to the court that the only Defendant alleged to have been involved in the use of force of any kind against Plaintiff was Officer Capobianco. The is no evidence of force used by any other Defendant. Therefore, the court dismisses any claim of excessive force as alleged against any Defendant other than Officer Capobianco.

In dismissing this claim the court rejects Plaintiff's argument that Officer Campbell, or,

indeed any other Defendant can be held liable on the theory that they failed to intervene to prevent the shooting of Plaintiff. As set forth in the principle case relied upon by Plaintiff, a failure to intervene claim is stated only where the defendant sought to be held liable had a "realistic opportunity ... to prevent the harm from occurring." Johnson v. County of Nassau, 2010 WL 3852032 *4 (E.D.N.Y. 2010). While the parties disagree on the particular facts preceding the shooting, there is no question as to the fast paced nature of those facts which in the court's view, preclude any claim based upon a failure to intervene. Accordingly, the court dismisses any excessive force claim alleged against any Defendant other than Officer Capobianco, which claim will be decided at trial.

### B. Unlawful Search

The court makes no findings at this time as to the liability of any individual Defendant with respect to the claim of illegal search. Any such finding must await trial.

## VI. State Law Claims

The court's holdings as to the presence of issues of material fact concerning Plaintiff's federal claims also preclude the entry of judgment as to Plaintiff's state law claims. The motion for summary judgment as to those claims is therefore also denied.

## CONCLUSION

For the reasons set forth above, the court denies Defendants' motion for summary judgment, except that all claims of excessive force are dismissed as to all Defendants other than Defendant Capobianco.

The Clerk of the Court is directed to terminate the motion appearing as entry number 47 in this matter. Counsel are reminded that jury selection in this matter is scheduled for June 24,

2013. There will be no adjournments.

SO ORDERED.

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
January 3, 2013